ISABEL CANDAL VICENTE y ANA SARA VICENTE, demandantes y recurrentes, *v.* CT RADIOLOGY OFFICE, INC., h/n/c CT RADIOLOGY COMPLEX, INC. y/o CT RADIOLOGY COMPLEX, demandados y recurridos.

*Número:* R-80-541      *Resuelto:* 3 de marzo de 1982

228

*Ramón Torres Braschi,* abogado de las recurrentes; *José Davison Lampón,* abogado de la recurrida CT Radiology Complex.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

La Ley Núm. 74 de 30 de mayo de 1976 enmendó el Código de Seguros para adicionarle como capítulo 41 (26 L.P.R.A. secs. 4101 a 4116) una serie de disposiciones que establecen "un programa de seguro de responsabilidad profesional médico-hospitalaria". Art. 41.020 (26 L.P.R.A. sec. 4102). Entre ellas, creó la "Administración del Fondo de Compensaciones al Paciente" con el propósito de "proveer una cubierta de responsabilidad profesional médico-hospitalaria" para cubrir hasta determinados límites y circunstancias las reclamaciones por daños por culpa o negligencia contra "los profesionales en el cuidado de [la]

salud y a las instituciones para el cuidado de [la] salud".
Art. 41.050 (26 L.P.R.A. sec. 4105). El Art. 41.100 (26
L.P.R.A. sec. 4110) provee como sigue:

> Toda acción civil que surja de una reclamación de daños
> por culpa o negligencia (*malpractice*) se iniciará mediante la
> radicación de una demanda, bajo juramento, en la sala del
> Tribunal competente. En estas acciones la Administración
> será una parte indispensable. El tribunal procederá a
> someter la reclamación a arbitraje según se dispone en la
> sec. 4111 de este título. En aquellos casos en que alguna de
> las partes no cuente con medios suficientes para pagar los
> costos del panel de arbitraje deberá hacerlo constar median-
> te alegación en la demanda.

Se nos plantea en el presente recurso si dicha ley, y
en particular la transcrita disposición, aplica a una
entidad que se dedica a realizar exámenes radiológicos
para fines de diagnóstico. Resolvemos que no. Una persona
o entidad que se dedique a ese tipo de servicio paramédico
no es el "profesional en el cuidado de [la] salud" ni la
"institución para el cuidado de [la] salud" a que se refiere
dicha ley.

Se trata aquí de una demanda instada por Isabel
Candal Vicente y su señora madre, doña Ana Sara
Vicente, contra CT Radiology Company, Inc. Se alega que
técnicos de la demandada sometieron a Isabel a una
prueba conocida por *cat scan* y que no obstante estar
advertidos por ambas de que no debían inyectarle un
llamado "contraste" por ser Isabel alérgica a la substancia,
desoyeron sus protestas y procedieron a inyectarle dicha
substancia, causando con ello una reacción alérgica que a
su vez ha producido daños que se relacionan en la
demanda y que valoran en $3,094.16 los especiales, y
$50,000 y $25,000 para hija y madre, respectivamente, por
concepto de daños morales.

La demandada solicitó la desestimación de la demanda.
Alegó ser una institución para el cuidado de la salud,
conforme a la definición de dicho término por la referida

ley, y, por tanto, cubierta por la misma, y que carecía el tribunal de jurisdicción por no cumplir la demanda con el Art. 41.100 (26 L.P.R.A. sec. 4110) antes transcrito, ya que ni fue jurado ni se incluyó como parte demandada a la Administración del Fondo de Compensación al Paciente.

El tribunal de instancia concedió término a los demandantes para exponer su posición. Éstos no comparecieron y se dictó sentencia desestimatoria de la demanda, que es objeto del presente recurso. Acordamos revisar.

█ Como nota introductoria, es de notarse que el "programa de seguro de responsabilidad profesional médico-hospitalaria" creado por la Ley Núm. 74 citada no protege *ipso jure*, sin más requisitos, a todos los profesionales e instituciones dedicados al cuidado de la salud. Dispone el Art. 41.060 (26 L.P.R.A. sec. 4106) en su inciso 1, primer párrafo:

> (1) Anualmente, cada profesional en el cuidado de salud e institución para el cuidado de salud que preste activamente servicios en Puerto Rico vendrá obligado a pagar a la Administración la aportación establecida por ésta para la cubierta provista en la sec. 4105(1)(a) de este título.

El Art. 41.070 (26 L.P.R.A. sec. 4107) establece en su inciso 2 que ". . . en ningún caso la Administración responderá por daños por culpa o negligencia *(malpractice)* ocasionados en un año fiscal para el cual el profesional en el cuidado de [la] salud o institución para el cuidado de [la] salud no haya cumplido con las aportaciones exigidas en la sec. 4106 de este título".

█ La demandada recurrida no alegó ni ofreció prueba de haber hecho las aportaciones requeridas por las citadas disposiciones. Se limitó a alegar (párrafo cuarto de su "Moción de desestimación") que es una institución para el cuidado de la salud, según la define la citada ley. Tal alegación es insuficiente. Una moción para desestimar no se interpreta liberalmente. Por el contrario, choca, en su ataque a la demanda, contra la norma reiteradamente

reconocida de que esto "se interpretará de tal forma que únicamente se desestimará si el demandante no tiene derecho a ningún remedio bajo cualesquiera hechos que él pueda probar en juicio a base de lo que ha alegado en la demanda. . . . *Moa* v. *E.L.A.*, 100 D.P.R. 573, 586 (1972). Frente a una moción para desestimarla, la demanda debe ser interpretada lo más liberalmente posible a favor de la parte demandante. *Meléndez* v. *Iturrondo*, 71 D.P.R. 60, 63 (1950); *Guadalupe* v. *Rodríguez*, 70 D.P.R. 958 (1950); *Serra* v. *Autoridad de Transporte*, 68 D.P.R. 626, 628 (1948); *Vázquez* v. *González*, 61 D.P.R. 277 (1943).

Examinemos si las disposiciones de la Ley Núm. 74 pueden ser extensivas a personas o entidades que presten servicios para fines de diagnóstico, como es el caso de la demandada recurrida.

■ El programa de seguro de responsabilidad profesional médico-hospitalaria establecido por la citada ley aplica únicamente a profesionales en el cuidado de salud y a instituciones para el cuidado de salud. En cuanto a los primeros, la ley los define, Art. 41.010 (26 L.P.R.A. sec. 4101) inciso 1, así:

(1) Profesional en el Cuidado de Salud—Significa cualquier persona, debidamente autorizada bajo las leyes del Estado Libre Asociado de Puerto Rico que ejerza las profesiones de médico cirujano, osteópata y odontología.

En cuanto a las segundas, dice el mismo artículo, en su inciso 2:

(2) Institución para el Cuidado de Salud—Significa cualquier facilidad u organización dedicada al cuidado y mantenimiento de la salud de un paciente, autorizada a tenor con las leyes del Estado Libre Asociado de Puerto Rico, excepto los asilos de fines no pecuniarios según se define este término en las secs. 331 a 333p del Título 24.

■ Es claro, por sus términos, que la demandada no cae bajo la primera definición. Tampoco cae bajo la definición de "Institución para el Cuidado de Salud" (*sic*).

El historial legislativo de la Ley Núm. 74 demuestra que la misma se refiere a *médicos* y a *instituciones hospitalarias*, y no a toda clase de personas o entidades que en alguna forma se empleen en el cuidado de la salud, sea mediante servicios de diagnóstico o de tratamiento. En el informe conjunto de las comisiones de lo Jurídico Civil, de Salud y Bienestar, y de Hacienda sometido al Senado en relación con el P. del S. 1788, que se convirtió en la Ley Núm. 74 citada, se señala:

> El P. del S. 1788 adiciona el Capítulo 41 a la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico.
>
> El propósito de esta medida es establecer los mecanismos para asegurar la disponibilidad de un seguro de responsabilidad profesional para *médicos* e *instituciones hospitalarias.* (Énfasis nuestro.)

La limitación de los alcances de la ley a *médicos* y a *instituciones hospitalarias* se reafirmó en la Ley Núm. 55 de 18 de julio de 1978, enmendatoria de la Ley Núm. 74, al señalar en su exposición de motivos:

> La Ley núm. 74 de 30 de mayo de 1976 adicionó el Capítulo 41 a la Ley núm. 77 de 19 de junio de 1957, según enmendada, conocida como Código de Seguros de Puerto Rico, con el fin de establecer los mecanismos necesarios para asegurar la disponibilidad de un seguro de responsabilidad profesional para *médicos e instituciones hospitalarias.* La medida fue adoptada en atención al problema de encarecimiento, escasez y pérdida del referido seguro que habían estado confrontando los *médicos e instituciones hospitalarias* en Puerto Rico y que trajo, como consecuencia, aumentos en los costos de los servicios de salud y serias limitaciones al ejercicio cabal y pleno de la medicina. Se pretendió, por tanto, prevenir y controlar un problema que acarreaba efectos adversos para la salud, el bienestar y la estabilidad del pueblo en general. (Énfasis nuestro.)

No podemos ir más allá de lo expresado por el legislador para extender los efectos de la Ley Núm. 74 a

personas que no son médicos cirujanos, osteópatas u odóntologos, a que se refiere taxativamente la definición de "profesional en el cuidado de salud". Tampoco podemos por interpretación judicial extender la aplicación de la ley a entidades que no son instituciones hospitalarias, es decir, aquellas que constituyen facilidades u organizaciones dedicadas "al cuidado y mantenimiento de la salud de un paciente". La gama de servicios paramédicos es extensa.[1] La fraseología de la Ley Núm. 74 no puede forzarse para alcanzar todas sus posibilidades.

La demandada CT Radiology no es un hospital ni presta servicios de cuidado de salud. Realiza exámenes radiológicos con fines de diagnóstico mediante computadoras y otras máquinas convencionales. Las personas que acuden a CT Radiology no son sus pacientes. No acuden a dicha entidad para que les cuide o mantenga su salud.

Por las razones expuestas, *se dictará sentencia que revoque la dictada por el tribunal de instancia y disponga la continuación de los procedimientos hasta la final adjudicación de los méritos de la reclamación de las demandantes recurrentes.*

El Juez Asociado Señor Martín emitió opinión disidente a la cual se unen los Jueces Asociados Señores Torres Rigual y Negrón García.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín a la que se unen los Jueces Asociados Señores Torres Rigual y Negrón García.

Me permito disentir de los fundamentos expresados en

---

[1] Para mencionar unos pocos hay, para fines de diagnóstico, empresas que ofrecen servicios radiológicos, como RC Radiology; otras que hacen exámenes de sangre, de orina o de excreta; y para fines de tratamiento hay quien prepara aparatos ortopédicos especiales; está el técnico que prepara dentaduras artificiales y otros aparatos relacionados con la odontología; y está el farmacéutico que prepara medicamentos prescritos por recetas.

la opinión del Tribunal para revocar la sentencia recurrida, y disiento además de la disposición del caso.

Los hechos alegados en la demanda objeto de este caso son los siguientes: la demandante sufrió daños por la negligencia (*malpractice*) de la parte demandada como consecuencia de una reacción alérgica durante el proceso de una prueba radiológica denominada *cat scan* (tomografía), a la que se sometió por instrucciones de su médico. Se alega además que como parte de la prueba un técnico le inyectó un "contraste" para proyectar el resultado con mayor claridad, a pesar de haberle advertido la paciente al técnico que ella era alérgica al "contraste", inyectándole además éste una sustancia anti-alérgica conocida por Benadryl, y luego al mostrar ciertos efectos alérgicos le fue inyectada cortisona y otros medicamentos, todo ello sin estar un médico presente. Alega también que con motivo de la reacción alérgica mencionada estuvo bajo tratamiento durante tres días, y que ha sufrido intensos dolores físicos y angustias mentales que relaciona en la demanda.

La demanda fue instada contra CT Radiology Complex, Inc.,[1] únicamente, quien alega en su contestación que es una institución para el cuidado de la salud según se define en la ley que crea la Administración del Fondo de Compensación al Paciente. Ley Núm. 74 de 30 de mayo de 1976 (26 L.P.R.A. sec. 4101(2)) según enmendada por la Ley Núm. 55 de 18 de julio de 1978, Sec. 1. En su consecuencia la demandada solicita la desestimación de la demanda por no haber sido jurada y por no haber unido a la Administración del Fondo de Compensación al Paciente como parte demandada, lo que alegadamente la hace fatalmente defectuosa por virtud de la ley mencionada.

El tribunal de instancia acogió los planteamientos de la institución demandada favorablemente y ordenó la desestimación de la demanda en virtud de la citada ley que crea

[1] Si una corporación puede dedicarse al ejercicio de la técnica radiológica, *quaere*. Véase, *Rasa Eng. Corp.* v. *Daubón,* 86 D.P.R. 193 (1962).

la Administración del Fondo de Compensación al Paciente. No conforme acude ante nos la parte demandante.

Alega en su recurso de revisión la demandante-recurrente que ella no es una *paciente*, ni la demandada es una *institución para el cuidado de la salud;* según ambos términos están definidos en la ley de marras. Argumenta la demandante que es solo una persona que acude a un laboratorio para hacerse unas pruebas, referida por su médico, quien las necesita para hacer un diagnóstico. Asimismo aduce que la corporación demandada opera un negocio de diagnóstico radiológico por medio de computadoras y otras maquinarias, por lo que no brinda *servicios profesionales de salud.* Sostiene por tanto que la acción no está predicada al amparo de las leyes núms. 74 de 1976 y 55 de 1978, sino bajo el Art. 1802 del Código Civil.

En la alternativa sostiene la demandante que constituyó error desestimar la demanda por no incluir una parte indispensable, puesto que la demanda pudo haber sido enmendada para unir como parte a la Administración del Fondo de Compensación al Paciente. Pero en cuanto al requisito del juramento de la demanda no discute la consecuencia de su omisión.

I

La opinión emitida hoy por este Tribunal resuelve que la parte demandante no viene obligada a cumplir con los requisitos de las leyes núms. 74 de 1976 y 55 de 1978 y procede a reinstalar la demanda. Tal conclusión de Derecho está basada en el análisis que se hace de la función que desempeña la demandada, la que califica como "servicios para fines de diagnóstico", y por ende los excluye de los conceptos de "profesional en el cuidado de salud" e "institución para el cuidado de salud" según se definen en dichas leyes. Estimo que los servicios para fines de diagnóstico están incluidos en las definiciones de "profesional en el cuidado de la salud" y de "institución para el

cuidado de salud". Considero además que la demandante es una "paciente" según se define este término en las referidas leyes. Veamos.

La Ley Núm. 74 de 1976, según enmendada por la Ley Núm. 55 de 1978, define la "institución para el cuidado de salud" como *"cualquier facilidad u organización* dedicada al *cuidado y mantenimiento de la salud* de un paciente, *autorizada a tenor con las leyes del Estado Libre Asociado de Puerto Rico*, excepto los asilos de fines no pecuniarios según se define este término en [la Ley Núm. 101 de 26 de junio de 1965, según enmendada]". (Énfasis suplido.) 26 L.P.R.A. sec. 4101(2).

Cabe preguntarse cuáles son las *facilidades* de salud autorizadas a tenor con nuestras leyes. La citada definición nos refiere a la Ley Núm. 101 de 1965 posteriormente enmendada por la Ley Núm. 150 de 20 de julio de 1979 (24 L.P.R.A. sec. 331 *et seq.*) en la que se enumeran las facilidades de salud que se dedican a la prestación de servicios de salud tales como hospitales, centros de salud, unidades de salud pública, centros de diagnóstico o tratamiento, servicio de salud pública y otros. El servicio de Rayos X que ofrece la demandada cae bajo la definición de "centro de diagnóstico o tratamiento" que se define en dicha Ley Núm. 101 como "una *facilidad* para el diagnóstico o el diagnóstico y tratamiento de pacientes ambulatorios, que opera en combinación con un hospital, *o en cualquier lugar en donde el cuidado del paciente está bajo la supervisión profesional de personas autorizadas a practicar la medicina. . .".* 24 L.P.R.A. sec. 331a(A)(4).[2] Más adelante discutiremos la naturaleza del servicio de Rayos X y su reglamentación bajo la ley.

[2] La Ley Núm. 150 de 1979 enmendó la citada disposición en los términos siguientes:

"(4) 'Centro de Diagnóstico o Tratamiento' significa una facilidad independiente u operada en combinación con un hospital que provee servicios a la comunidad para el diagnóstico y tratamiento de pacientes ambulatorios, bajo la supervisión profesional de personas autorizadas a practicar la medicina, cirugía o dentistería en Puerto Rico."

Las facilidades de salud a que se refiere la Ley Núm. 101 requieren una licencia del Departamento de Salud para operar como tales y están sujetas a la continua supervisión de dicho departamento. El Secretario de Salud está facultado para tomar medidas disciplinarias contra las mencionadas facilidades de salud cuando incurren en daños por culpa, negligencia (*malpractice*) o impericia profesional. Para ello la Ley Núm. 101 impone a la Administración del Fondo de Compensación al Paciente la obligación de informar al Secretario sobre los casos por ella adjudicados. 24 L.P.R.A. sec. 333g-1. (³) Véanse disposiciones relacionadas en 26 L.P.R.A. secs. 4106(5), 4108(3), 4115. También el Secretario debe suspender la licencia de la facilidad de salud que no cumpla con el pago de la aportación a la Administración requerido por la Ley Núm. 74 de 1976, según enmendada, o que no radique la prueba de responsabilidad financiera requerida por dicha ley. 24 L.P.R.A. sec. 333g-2. (⁴) Es evidente cómo se complementan la Ley Núm. 74 de 1976, que regula el fondo de compensación al paciente, y la 101 de 1965, enmendada, que reglamenta las facilidades de salud.

Volvamos a la Ley Núm. 74 de 1976 para examinar sus otras definiciones y su relación con el presente caso. Define al "profesional en el cuidado de salud" como "cualquier persona, debidamente autorizada bajo las leyes del Estado Libre Asociado de Puerto Rico que ejerza las profesiones de médico cirujano, (⁵) osteópata y odontología". 26 L.P.R.A. sec. 4101(1).

---

(³) La Ley Núm. 150 de 1979 no enmendó esta disposición.

(⁴) *Idem.*

(⁵) La Ley Núm. 74 antes de ser enmendada por la Ley Núm. 55 requería que el médico cirujano, osteópata y odontólogo ejerciera dichas profesiones "actuando como principal". Esta frase fue eliminada por la Ley Núm. 55 con el propósito de que la definición incluya a *todos* los médicos, cirujanos, osteópatas y odontólogos. Así se amplió el concepto que parecía referirse sólo a los médicos cirujanos, sin requerir que actúe como principal.

Asimismo la Ley Núm. 74 define "cuidado o servicio de salud" como "cualquier acto, acción o tratamiento prestado, o que debió haber sido prestado por un profesional en el cuidado de salud o una institución para el cuidado de salud a un paciente". 26 L.P.R.A. sec. 4101(5).

El término "paciente" lo define como "cualquier persona que por contrato explícito o implícito reciba o debía haber recibido cuidado o servicio de salud de un profesional en el cuidado de salud o de una institución para el cuidado de salud". 26 L.P.R.A. sec. 4101(3).

Y por último define el "daño por culpa o negligencia (*malpractice*)" como el "ocasionado a un paciente por error, omisión, culpa o negligencia como consecuencia de o inherentes a servicios profesionales brindados o que debieron haber sido brindados por un profesional en el cuidado de salud o una institución para el cuidado de salud". 26 L.P.R.A. sec. 4101(4).

A la luz de las definiciones expuestas precedentemente, debemos analizar la naturaleza de los servicios prestados por la demandada respecto a la demandante a los fines de determinar si quedan cobijados bajo las leyes núms. 74 de 1976 y 55 de 1978.

Un examen de la ley que reglamenta la práctica de los Rayos X, nos revela la naturaleza de lo que define como "técnica radiológica". 20 L.P.R.A. secs. 361–378. Ésta significa: "los métodos y procedimientos especializados usados en la rama de la ciencia médica que trata sobre el uso de equipo radiológico, especialmente para *diagnosticar* u ofrecer tratamiento en el campo de la medicina." (Énfasis suplido.) 20 L.P.R.A. sec. 361(b). Exige dicha ley que "[t]oda persona que se dedique al ejercicio de la técnica radiológica, y que como tal manipule equipo de Rayos-X, o sustitutos, tal como telecobalto y telecesio, sean éstos usados para *diagnóstico*, radioterapia o cualquier otro fin, o que en cualquier forma intervenga con el manejo o funcionamiento del equipo mencionado deberá ejercer sus

funciones bajo la *supervisión directa de un médico* y poseer una licencia de técnico en radiología". (Énfasis suplido.) 20 L.P.R.A. sec. 361(a).

Según las alegaciones de la demanda, la prueba a que fue sometida la demandante por la demandada tenía como propósito el "diagnóstico" de la condición que sufría la demandante. Diagnóstico no es otra cosa que el "[c]onjunto de signos que sirven para fijar el carácter peculiar de una enfermedad" o la "[c]alificación que da el médico a la enfermedad según los signos que advierte". *Diccionario de la Lengua Española*, Real Academia Española, 19na ed., 1970.. El diagnóstico, pues, lo hacen los médicos, y en el evento de que se use la técnica radiológica para ello, se hace bajo la *supervisión directa de un médico*. El diagnóstico, a su vez, es parte integrante y principalísima en el cuidado y tratamiento de un paciente, puesto que el resultado del diagnóstico es la base para el tratamiento. Un error en el diagnóstico que tenga consecuencias lesivas al paciente da lugar a una reclamación por mala práctica médica. En el caso particular de la prueba a que fue sometida la demandante hubo una intervención con su cuerpo y sistema biológico al ser inyectada con una sustancia que se alega causó los daños reclamados. No tenemos duda alguna de que los servicios prestados a la demandante por la demandada constituyen un diagnóstico y que la demandada en su consecuencia es una "facilidad de salud" donde se prestan "servicios de salud", por lo que son de aplicación a los hechos alegados en el caso de autos las leyes núms. 74 de 1976 y 55 de 1978.

## II

La demandante plantea como error el haber desestimado la demanda por no haberse incluido a la Administración como parte indispensable según exige la ley 26 L.P.R.A. secs. 4107(1), 4110, Suplemento 1981. La sec. 4107(1) dispone que la demanda *"incluirá* a la Adminis-

tración como parte en el pleito a fin de poder recobrar del profesional en el cuidado de salud, institución para el cuidado de salud o de la Administración". (Énfasis suplido.) La sec. 4110, que está contenida entre las disposiciones que regulan el arbitraje, estatuye que en las reclamaciones de daños por culpa o negligencia (*malpractice*) "la Administración será una parte indispensable". Consideramos que ambas disposiciones legales tienen el mismo efecto, esto es, la inclusión de la Administración como parte indispensable.

¿Cuál es el efecto de la omisión? La sanción de ley por la no inclusión de la Administración como parte es el que no se pueda recobrar de ésta ni del profesional o institución en el cuidado de la salud. Pero sabemos que la omisión de una parte indispensable, aunque es motivo para desestimar un pleito, no es óbice para que el tribunal pueda conceder, a la parte que incurrió en la omisión, la oportunidad para traer al pleito a la parte omitida, siempre y cuando el tribunal pueda adquirir jurisdicción sobre ella. Véanse Reglas de Procedimiento Civil 16.1 y 18; Comentario a la Regla 18; 3A *Moore's Federal Practice: Civil*, sec. 21.04(2), pág. 21-20.

## III

Aunque la demandante no señala como error específico la falta de juramento de la demanda que constituyó uno de los fundamentos de la desestimación por el tribunal de instancia, es preciso discutir el alcance de dicho requisito en vista de que entendemos que la ley lo exige. Originalmente la Ley Núm. 74 de 1976 no exigía la juramentación de la demanda, requisito que fue adicionado por la Ley Núm. 55 de 1978. 26 L.P.R.A. sec. 4110. No hemos podido encontrar en el historial legislativo ningún indicio sobre el propósito del juramento. Hemos de presumir que es para garantizar la veracidad de los hechos alegados, sometiendo así al demandante a las consecuencias del

perjurio. Tampoco la ley declara las consecuencias de la falta de juramento. Es de notar que el requisito del juramento surge en aquella parte de la ley que reglamenta el "Arbitraje de reclamaciones por culpa o negligencia". El procedimiento de arbitraje fue declarado inconstitucional en *Vélez Ruiz* v. *E.L.A.*, 111 D.P.R. 752 (1981). Aunque el requisito del juramento quedó en pie, tratándose de un requisito que estaba íntimamente ligado al esquema de arbitraje invalidado, su importancia ha quedado disminuida en alguna medida, pero aun así estimamos que debe ser un requisito de estricto cumplimiento, que puede ser subsanado mediante solicitud al efecto o *sua sponte* por el tribunal. *Cf. Piñero* v. *Martínez Santiago*, 104 D.P.R. 587 (1976).

## IV

En vista de todo lo anterior es nuestra opinión que la demandada en el caso de autos es una "institución para el cuidado de [la] salud" y la demandante una "paciente", y que el acto, acción o tratamiento prestado a la "paciente" es un "cuidado o servicio de salud", conforme todos dichos términos están definidos en la Ley Núm. 74 de 1976, según enmendada por la Ley Núm. 55 de 1978, siendo por tanto de aplicación las citadas leyes a los hechos alegados en la demanda. Habiendo concluido, sin embargo, que la demandante puede subsanar tanto el defecto producido por la omisión del juramento en la demanda, como la omisión de incluir a la Administración como parte indispensable, revocaría la sentencia recurrida que desestimó el pleito y remitiría los autos al tribunal de instancia para que éste determine si puede adquirir jurisdicción sobre la Administración del Fondo de Compensación al Paciente.