González Román, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Sr. Elias Rosario Feliciano (Sr. Rosario), su esposa y la sociedad legal de gananciales que entre ellos existe (esposos Rosario), interesan que se revoque la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 9 de julio de 1998 y archivada al día siguiente la cual desestima por prescripción las reclamaciones sobre discrimen político y por edad del Sr. Rosario anteriores al 11 de agosto de 1996 y sujeta las reclamaciones posteriores al agotamiento del trámite administrativo ante la Autoridad de Acueductos y Alcantarillados (AAA). El tribunal apelado resolvió que el Sr. Rosario conoció el daño que no le concederían el puesto solicitado de Gerente Técnico de Area de Carolina desde el 19 de abril de 1996 y como la demanda fue presentada el 11 de agosto de 1997, el término prescriptivo de un (1) año había expirado. Inconformes, los esposos Rosario presentaron el recurso de apelación ante nos. Plantean que el tribunal apelado erró al desestimar por prescripción las causas de acción anteriores al 11 de agosto de 1996, fundadas en la no adjudicación final al Sr. Rosario del puesto de Gerente Técnico de Area de Carolina, la causa que surge al trasladar al Sr. Rosario a las Oficinas Centrales de la AAA y además entienden que no había que agotar el cauce administrativo en cuanto a la reclamación por el no ascenso del Sr. Rosario al puesto vacante de Director de Area de Corozal.
Por su parte, la AAA y el Sr. Pomales presentaron una apelación el 11 de agosto de 1998 ante nuestro foro, alegando que el tribunal apelado erró al solamente desestimar las reclamaciones basadas en hechos anteriores al 11 de agosto de 1996, reteniendo jurisdicción en tomo al no ascenso del Sr. Rosario al puesto vacante en Corozal. Según la AAA y el Sr. Pomales, esta tercera causa de acción también está prescrita pues el Sr. Rosario no apeló ante el foro administrativo apropiado dentro del término para ello. Tras varios incidentes procesales, que incluyen la consolidación de las apelaciones de los esposos Rosario y la del Sr. Pomales y la AAA, nos encontramos en posición de resolver.
Examinados detenidamente los alegatos de todas las partes, por los fundamentos que se expondrán a continuación, revocamos la sentencia del tribunal apelado y devolvemos el caso al Tribunal de Primera Instancia para que atienda los reclamos de los esposos Rosario. Procedamos a hacer un *1073 recuento de los hechos en el caso de epígrafe no contradichos por las partes.
I
El Sr. Rosario comenzó su carrera en la AAA el 1ro. de junio de 1971 en calidad de Ayudante de Ingeniero. Tras licenciarse como ingeniero en julio del 1986, ha ocupado varios puestos de carrera en la AAA, en específico, Ingeniero I y II e Ingeniero de Operaciones II y m. También ocupó puestos de confianza durante el período de 1989 a enero de 1993, últimos años de la administración gubernamental del Partido Popular Democrático (PPD). El Partido Nuevo Progresista (PNP) resultó victorioso en los comicios generales de noviembre de 1992.
El 14 de diciembre de 1995 el Sr. Benjamín Pomales (Sr. Pomales) advino Director Ejecutivo de la AAA. Cerca de esta fecha la compañía Professional Services Group (PSG) comenzó a administrar, bajo contrato, las operaciones de la AAA.
Alrededor del 12 de enero de 1996 la AAA y/o la PSG publicaron una convocatoria para el puesto de carrera de Gerente de Técnico de Area Región Metro. El Sr. Rosario sometió una solicitud para que se le considerase para dicho puesto, el cual de serle adjudicado constituirá un ascenso. Tras una evaluación escrita, el apelante fue incluido en el Registro de Elegibles para el puesto de Gerente Técnico de Area de Carolina. Surge del expediente que la AAA, de hecho, seleccionó al Sr. Rosario para el puesto mencionado, mas éste alega que representantes de PSG le informaron que el Director Ejecutivo de la AAA, Sr. Pomales, tenía objeción en tomo a su selección. Así las cosas, el Sr. Rosario solicitó, mediante carta de 2 de abril de 1996, una audiencia con el Sr. Pomales para discutir su selección al puesto solicitado y aparentemente concedido.
El 18 de abril de 1996 el Sr. Rosario le cursó una carta al Sr. Pomales reclamando su derecho al puesto o que, en su defecto, se le compensará de manera justa. El 8 de mayo de 1996 un ingeniero Pimentel, mediante carta y bajo instrucciones del Subdirector de Ingeniería y Planificación de la AAA, Ing. Alexander Melández, le informó al Sr. Rosario que sería designado como "enlace" entre la AAA y la Autoridad de Carreteras y Transportación (ACT). Dos días después, el 10 de mayo del 1996, el Sr. Rosario cursó otra carta al Sr. Pomales, cuestionando esta designación como "enlace".
El 20 de mayo de 1996, mediante carta, el Sr. Rosario le reclamó al Sr. Pomales que le ascendiera de puesto y clasificación. En dicha misiva, el Sr. Rosario hace referencia a una reunión con el Sr. Pomales celebrada el 19 de abril de 1996 en la cual alegadamente las partes acordaron que el Sr. Rosario obtendría una clasificación mayor, que superaría la de Gerente de Técnico de Area.
El 3 de junio de 1996, el Director de Recursos Humanos de la AAA, Sr. José E. Nieves, le informó al Sr. Rosario que sería trasladado de Trujillo Alto al área de Ingeniería en el Edificio Central de Hato Rey y que su salario y clasificación no variarían.
El día 10 de junio de 1996 el Sr. Rosario presentó ante el Sr. Pomales una solicitud, de reconsideración de la decisión de trasladarlo, alegando violaciones a los procedimientos y reglas sustantivas del Reglamento de Personal dé la AAA. Este afirma que las decisiones que se han tomado sobre su carrera han inhibido su desarrollo profesional en violación al principio del mérito. Del expediente no surge ninguna contestación oficial ni determinación final en tomo a la solicitud de reconsideración del Sr. Rosario.
El 15 de agosto de 1996 el Sr. Rosario cursó otra misiva al Sr. Pomales. En ésta objeta el hecho que nunca se le haya notificado oficialmente una decisión final y escrita en tomo al alegado acuerdo entre las partes de ascenderlo y reclasificarle. El Sr. Rosario expresó que esperaba que su afinidad con el Partido Popular no hubiese influido en el ánimo del Sr. Pomales. Este expresó, además, que recibió una carta del Sr. Carmelo Nieves Torres, Ayudante Subdirector de Apoyo Gerencial y Ambiental, como contestación a su solicitud de reconsideración al traslado presentada ante el Sr. Pomales.
El Sr. Rosario le cursó otra serie de cartas al Sr. Pomales, el 16 de septiembre del 1996, el 11 de marzo de 1997 y el 28 de mayo de 1997 esencialmente repitiendo sus reclamos. Alega, además, que no es hasta mayo de 1997 que recibe, de manera anónima, una nueva Certificación de Elegibles, que cambia su status de "s" (seleccionado) a "c" (considerado) en cuanto al puesto de Gerente Técnico de *1074 Area de Carolina. El 7 de agosto de 1997 el Sr. Rosario le cursó otra carta al Sr. Pomales informándole que se había enterado a través de una tercera persona, un tal ingeniero Femando Pina, que éste tampoco le concedería el puesto vacante de Director de Area de Corozal.
El 11 de agosto de 1997 los esposos Rosario presentaron demanda alegando que hubo discrimen político y por edad en su contra 1) al no adjudicarle el puesto de Gerente Técnico de Area de Carolina tras ser seleccionado, 2) al trasladarle de Trujillo Alto a Hato Rey y 3) al no haber sido ascendido al puesto de Director de Area de Corozal. Por otra parte, la AAA, el Sr. Benjamín Pomales y otros presentaron una moción solicitando la desestimación de la demanda alegando la prescripción de la causa de acción, a lo cual se opuso el Sr. Rosario..
El tribunal apelado dictó sentencia desestimando la demanda por razón de la prescripción de las reclamaciones por discrimen político y por edad anteriores al 11 de agosto de 1996 y condicionó las reclamaciones posteriores a dicha fecha al agotamiento del trámite administrativo ante la AAA. Además, el tribunal apelado manifestó conservar su jurisdicción sobre los asuntos no prescritos hasta un año después de que se agotara el proceso ante la agencia. Dicho tribunal razonó que el Sr. Rosario conoció el daño -que no le concederían el puesto solicitado de Gerente Técnico de Area de Carolina desde el 19 de abril de 1996 y toda vez que la demanda fue presentada el 11 de agosto de 1997, el término prescriptivo de un (1) año había expirado. La AAA y el Sr. Pomales solicitaron la reconsideración en tomo a la parte de la sentencia que conserva jurisdicción sobre el asunto del no ascenso del Sr. Rosario al puesto de Director de Area de Corozal, pues entienden que el término para apelar ante la agencia había transcurrido. Sin embargo, el tribunal la declaró sin lugar. Como ya hemos explicado, el Sr. Rosario apeló el 10 de agosto de 1998 planteando que el tribunal a quo erró al desestimar sus reclamaciones por razón de prescripción y, a su vez, el 11 de agosto de 1998, la AAA y el Sr. Pomales apelaron la parte de la decisión que retuvo jurisdicción sobre el no ascenso del Sr. Rosario al puesto en Corozal.
Antes de entrar de lleno en la discusión de los planteamientos ante nos, es preciso señalar que consideramos errónea la actuación del tribunal apelado al desestimar sin vista, mediante brevísima sentencia de escasamente dos páginas, un caso en donde la apreciación de la prueba es primordial para disponer del asunto y en el cual de las alegaciones del Sr. Rosario surgen varias posibles teorías jurídicas meritorias para la concesión de un remedio, las cuales discutiremos a continuación. Dorante v. Wrangler of Puerto Rico, 145 D.P.R. _ (1998), 98 J.T.S. 49; Condal v. CIT Radiology Office. Inc., 112 D.P.R. 227 (1982).
La cuestiones a resolver en ente recurso son: 1) si ha expirado el término prescriptivo de un año según dispone el Artículo 1868 del Código Civil, 31 L.P.R.A. see. 5298, aplicable a la causa de acción en daños y peijuicios por alegado discrimen político y por edad en el empleo por la no selección del Sr. Rosario a dos puestos solicitados y por un alegado traslado ilegal, 2) si los términos procesales apelativos ante la agencia habían expirado y 3) si el Sr. Rosario tiene que agotar el cauce administrativo para un remedio. A la luz de la crónica de eventos y de los principios jurídicos aplicables, resolvemos que la causa de acción sigue vigente y justiciable, que no hay que agotar los remedios administrativos y que el término para apelar ante la agencia nunca comenzó a decursar. Discutiremos los planteamientos conjuntáronte. Veamos.
En Cintrón v. E.L.A., 127 D.P.R. 582 (1990), el Tribunal Supremo estableció la abarcadora norma de que en casos de acción en daños contra el Estado por una acción discriminatoria, arbitraria, o de otra manera ilegal sufrida por un empleado público:
"bien sea despido, traslado, reclasificación, cambio de status, etc. En tales casos, <?t término prescriptivo comienza a correr con la notificación al empleado de la actuación administrativa de la autoridad nominadora y no con el decreto de ilegalidad del foro administrativo. Es desde aquel momento que el empleado tiene o debe tener conocimiento de los daños causados por la actuación de la agencia." (Enfasis nuestro.)
La Ley de Procedimiento Administrativo Uniforme (LPAU), en su sec. 3.16, aclara el contenido de una notificación correcta al disponer:
*1075 "Si la agencia concluye o decide no iniciar o continuar un procedimiento adjudicativo en un caso en particular, terminará el procedimiento y notificará por escrito por correo certificado con acuso de recibo a las partes su determinación. Los fundamentos para la misma y el recurso de revisión disponible." (Subrayado nuestro.) 3 L.P.R.A. sec. 2166.
A su vez, la sec. 3.14 del mismo estatuto, 3 L.P.R.A. sec. 2164 dispone en lo pertinente, que toda orden o resolución final "deberá ser emitida por escrito", "firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley", "[IJa agencia deberá notificar por correo y deberá archivar en autos copia de la orden o resolución final y déla constancia de la notificación" y que " [ujna parte no podrá ser requerida a cumplir con una orden final a menos que haya sido notificada de la misma". 3 L.P.R.A. sec. 2164.
Tomando como base las constancias del expediente es forzoso señalar que en el caso de autos nunca comenzó a correr término prescriptivo alguno, pues no surge que al Sr. Rosario se le haya notificado debidamente sobre la acción o decisión administrativa de no nombrarlo al puesto de Gerente Técnico de Area de Carolina. Por el contrario, sí consta en el expediente que lo incluyeron en el Registro de Elegibles para el puesto, con una denominación "S" de "seleccionado”. Ninguna de las demás comunicaciones recibidas por Sr. Rosario cumplen con los requisitos legales previamente expuestos. Estas, lejos de disponer del caso, sólo contribuyen a agravar la confusión del Sr. Rosario. Así, tras éste reclamarle al Sr. Pomales su derecho el 18 de abril de 1996, lo que recibe como contestación es una carta suscrita por Ing. Pimentel bajo instrucciones del Ing. Alexander Meléndez, no del Sr. Pomales, la cual le denomina "enlace” entre la AAA y la ACT. De igual manera, cuando el Sr. Rosario le reclama al Sr. Pomales que honre los acuerdos de la alegada reunión de 19 de abril de 1996 donde recibe, en vez de una contestación del Sr. Pomales, una carta de 3 de junio de 1996 en la cual el Director de Recursos Humanos de PSG le informa de su traslado de Trujillo Alto a Hato Rey. De ahí en adelante el Sr. Rosario siguió reclamándole al Sr. Pomales que se le respetaran sus derechos en tomo al puesto en controversia y el alegado traslado ilegal. El Sr. Rosario plantea que no es hasta mayo de 1997 que recibe, de manera anónima, una nueva Certificación de Elegibles, que cambia su status de "s" (seleccionado) a "c" (considerado) en cuanto al puesto de Gerente Técnico de Area de Carolina. Lo mismo ocurre en relación al otro puesto solicitado, Director de Area de Corozal, pues el Sr. Rosario alega haberse enterado a través de una tercera persona, Ing. Femando Pina, que el Sr. Pomales tampoco le concedería dicho puesto.
Como requisito mínimo del debido proceso de ley resulta evidente que una notificación de una decisión administrativa, para surtir efectos jurídicos, tiene que ser hecha por escrito, dirigida al afectado y suscrita por el funcionario, oficial o junta autorizada para emitir tales decisiones. No hay duda que el término prescriptivo de las acciones en daños y perjuicios comienza a decursar "desde que lo supo el agraviado”, según el Artículo 1868 del Código Civil, supra. Resulta altamente reprochable atribuirle conocimiento del daño al Sr. Rosario, a base de las informaciones provistas a éste de forma oral, o a través de intermediarios o terceras personas, o a base de rumores e insinuaciones que obvian los principios de debido proceso estatuidos por nuestro ordenamiento los cuales protegen a la ciudadanía de la arbitrariedad administrativa. López v. Asoc. de Taxis de Cayey, supra, nota 3, a la pág. 400.
Esto nos lleva al igualmente incorrecto planteamiento de la AAA y del Sr. Pomales que aunque la tercera causa de acción del Sr. Rosario no estuviera prescrita, es decir, la acción que surge del no ascenso al puesto vacante en Corozal, el término para acudir al foro apelativo de la AAA para impugnar dicha actuación había transcurrido, y que, por tanto, el Sr. Rosario se quedó sin un remedio en ley. En Pérez Pellot v. J.A.S.A.P., 139 D.P.R. _ (1995), 95 J.T.S. 160, al negar la incuria de unos peticionarios y en protección de los derechos de los empleados públicos según el principio del mérito, el Tribunal Supremo estableció que para que corran términos procesales, toda agencia cubierta por Ley de Personal del Servicio Público, 3 L.P.R.A. 1301 et seq. tiene:
"como parte del proceso de reclutamiento y selección de empleados '... el deber de notificar [Oficialmente] a los ciudadanos que hayan sido certificados como elegibles según lo dispone la referida Ley, que la plaza por ellos solicitada no les fue adjudicada. Deberán también notificar a dichos ciudadanos su derecho a interponer apelación ante J.A.S.A.P."
*1076 Aunque la AAA está excluida de la mencionada Ley de Personal del Servicio Público, supra, sí le aplica el principio del mérito en ésta promulgado, pues la intención legislativa de esta ley fiie proteger, entre otros, a los empleados de las corporaciones públicas, exentas y no exentas de sus disposiciones. Laboy v. E.L.A., 115 D.P.R. 190 (1984); Reyes Coreano v. Director Ejecutivo, 110 D.P.R. 40 (1980). Además, por virtud de su propio Reglamento de Personal, dicho principio del mérito y la función de equidad y justicia que éste encama, obliga jurídicamente a la AAA. 
Al Sr. Rosario nunca se le notificó oficialmente la decisión de no adjudicarle el puesto vacante en Corozal y a fortiori, tampoco se le informó sobre sus derechos procesales y los términos apelativos aplicables. Así, por razón del debido proceso de ley, nunca comenzó a decursar el plazo procesal de diez (10) días laborables para presentar un recurso ante el Comité de Apelaciones de la AAA. Lógicamente, tampoco comenzó a correr el término para apelar ante J.A.S.A.P. una decisión que nunca fue emitida por dicho comité.
Además de los fundamentos jurídicos expuestos, hay aspectos adicionales que favorecen la posición del Sr. Rosario. El Tribunal Supremo ha resuelto que la prescripción se fundamenta en la inercia del acreedor de un derecho durante un tiempo determinado la cual Se interrumpe mediante la manifestación inequívoca de un acto de voluntad contrario al mantenimiento de la situación inerte. Galib Frangle v. El Vocero de P.R., 138 D.P.R. _ (1995), 95 J.T.S. 71; García Aponte, et. al. v. E.L.A.. et. al., 135 D.P.R.(1994), 94 J.T.S. 14. Así, en la reciente opinión de Martínez v. Soc. de Gananciales, 145 D.P.R. _ (1998), 98 J.T.S. 29, a las páginas 698, 699, el Supremo expresó sobre esta reiterada doctrina que:
"[E]l fundamento detrás de ésta figura es el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar el 'señorío de las cosas' al evitar litigios difíciles de adjudicar debido a la antigüedad de las reclamaciones (citas omitidas]. La interrupción de la figura de la prescripción se basa, por tanto, en la actividad o ruptura de aquella inercia. El fundamento reconocido de interrupción es la manifestación inequívoca de quien, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo.” [citas omitidas].
A tenor con lo anterior, el Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5303, dispone:

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de deuda del deudor."

El tribunal apelado obvió las alegaciones del Sr. Rosario y resolvió que éste conoció el daño de que no le concederían el puesto de Gerente Técnico de Area de Carolina el día 19 de abril de 1996 y que, por ende, la causa estaba prescrita. Sin embargo, aunque tomáramos esta fecha como punto de partida para computar la prescripción, la cronología de hechos del recurso de autos presenta un apelante, que lejos de ser un acreedor inerte e inmóvil, resulta ser altamente diligente en el reclamo de sus derechos mediante repetidas reclamaciones extrajudiciales dirigidas al Sr. Pomales. Así, el 20 de mayo de 1996, el 10 de junio de 1996, el 15 de agosto de 1996, el 16 de septiembre de 1996, el 11 de marzo de 1997, el 28 de mayo de 1997 y el 7 de agosto de 1997, el Sr. Rosario cursó cartas al Sr. Pomales, reclamando inequívocamente sus derechos ante una maquinaria administrativa que, como poco, nos resulta evasiva, impredecible y arbitraria. De manera similar, como al Sr. Rosario nunca le informaron sus derechos apelativos procesales, el término que aplicaría sería uno de incuria. Mas al Sr. Rosario no le puede afectar dicha doctrina por razón de su diligencia, la cual ya hemos relatado.
Tampoco podemos concurrir con el tribunal apelado en cuanto a que las alegaciones posteriores al 11 de agosto del 1996 están sujetas a que el trámite administrativo termine. De hecho, entendemos que proseguir el trámite administrativo sobre cualquiera de las reclamaciones del Sr. Rosario constituiría "una gestión inútil, inefectiva, y que no ofrece un remedio adecuado". Vda. de Iturregui v. E.L.A., 99 D.P.R. 488 (1970). La sec. 4.3 de la LPAU codifica este principio jurisprudencial de relevo del agotamiento de remedios y dispone, en lo pertinente, que:
"]e]l tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio resultare inadecuado, [...] o cuando sea *1077 inútil agotar los remedios administrativos por la dilación excesiva de los procedimientos, [...] o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa". 3 L.P.R.A. sec 2173.
De los hechos surge que el Sr. Rosario trató mediante un sinnúmero de cartas y escritos de lograr que la agencia considerara sus planteamientos y los resolviera según disponen las normas administrativas. A su vez, la AAA, lejos de considerarlos y resolverlos, le responde al Sr. Rosario con una serie de comunicaciones que ni tan siquiera incluyen aspectos tan básicos como un apercibimiento del derecho a revisar la decisión tomada o los términos procesales aplicables según dispone la sec. 3.14 de la LPAU, 3 L.P.R.A. sec. 2164.10. Así el Sr. Rosario de buena fe trató de utilizar los canales de la agencia para ventilar el caso, pero por razones ajenas a él, más que en un proceso administrativo, éste se encontró ante un limbo burocrático el cual le negaba un remedio adecuado. Además, la controversia no es una que requiera de la pericia o del expertise administrativo para adjudicarse. No tenemos ante nos una controversia sobre abastos o distribución de agua; el caso de autos es esencialmente sobre prescripción, es decir, sobre cuándo fue que el agraviado conoció el daño. El tribunal apelado, por ser el verdadero perito en derecho, debió entrar a apreciar la prueba y así aplicar la Ley. Colón v. Méndez, Depto. Recursos Naturales, 130 D.P.R. _ (1992), 92 J.T.S. 51.
Por tanto, el tribunal apelado erró al desestimar por la alegada prescripción de la acción y por razón de no agotar los remedios administrativos. Sin que se entienda que las alegaciones de la demanda tendrán éxito al concluir el trámite, resolvemos que el tribunal a quo debió entrar a considerar la prueba, los planteamientos de las partes y aplicar el derecho.
Por los fundamentos expuestos se revoca la sentencia apelada y se ordena al tribunal apelado a continuar con los procedimientos consistentes con todas las reclamaciones presentadas y lo aquí resuelto. El Juez Córdova Arone emitió voto disidente por escrito.
Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*1079 VOTO DISIDENTE DEL JUEZ DE APELACIONES SR. CORDOVA ARONE - 99 DTA 90
San Juan, Puerto Rico, a 20 de enero de 1999
Por estar en desacuerdo con la opinión emitida por mis distinguidos compañeros de la mayoría muy respetuosamente disiento. He hecho el esfuerzo real para compartir el razonamiento que la decisión mayoritaria presenta para evitar el cedazo de la prescripción, pero el mismo no me persuade. Por las razones que expondré, estoy convencido que las causas de acción presentadas por los apelantes Elias Rosario y su esposa, por no haber recibido éste el nombramiento para la posición de Gerente Técnico de Area de Carolina de la Autoridad de Acueductos y Alcantarillados a fines de marzo o comienzo de abril de 1996, como tampoco ser posteriormente trasladado el 29 de mayo de 1996, de Trujillo Alto a las Oficinas Centrales de la AAA, están prescritas. Resolvería además, que la tercera transacción de personal impugnada, negarle al Sr. Rosario el ascenso a la plaza de Director de Area de Corozal el 17 de abril de 1997 debería desestimarse por falta de jurisdicción. Por lo tanto, ordenaría que la sentencia apelada se confirme y se modifique a estos fines. Veamos los hechos pertinentes del caso que estamos revisando.
El 11 de agosto de 1997 fue presentada la demanda del caso de autos. El Sr. Rosario alegó que se discriminó contra él por razones políticas en relación a las tres transacciones de personal antes relacionadas. Reclamó daños y perjuicios bajo la Ley Núm. 100 de 30 de junio de 1959, (29 L.P.R.A. see. 146 y ss.), las Constituciones de los Estados Unidos y de Puerto Rico y la Ley Federal de Derechos Civiles, 42 U.S.C. see. 1983.
El 22 de enero de 1996 el Sr. Rosario presentó su solicitud para el puesto de Gerente Técnico de Area de la Región Metro. El 13 de febrero del mismo año se le informó de su eligibilidad al puesto. A fines de marzo o principios de abril de 1996, según se alega en la demanda, se le informó verbalmente al Sr. Rosario que había sido seleccionado para el puesto de Gerente Técnico de Area de Carolina.
Pidió audiencia con el Director Ejecutivo de la AAA, la cual se celebró el 19 de abril de 1996. Los eventos subsiguientes, los cuales se expresan en la demanda presentada por los esposos Rosario, a mi entender establecen los términos que me convencen que sus reclamaciones están prescritas.
La alegación 17 de la demanda reconoce que se celebró la reunión con el Director Ejecutivo de la AAA y que éste expresó que aunque el Sr. Rosario fue seleccionado, no se había procesado su nombramiento. El Director expresó que lo retendría en el puesto que ocupaba en ese momento (Ingeniero de Operaciones III) y que le daría un ascenso con nuevas funciones que constituirían un cambio de deberes y a un puesto nuevo superior al de Gerente Técnico de Area. (Alegación 18 de la demanda). El 8 de mayo de 1996 se le añadieron funciones al Sr. Rosario, pero correspondientes a la clase de Ingeniero de Operaciones I, puesto de inferior jerarquía. (Alegación 19 de la demanda). El 10 de mayo del mismo año, el Sr. Rosario se quejó de este procedimiento y le informaron que le dejarían saber el resultado de su queja posteriormente. (Alegación 20 de la demanda). El 20 de mayo de 1996, el Sr. Rosario le escribió al Director Ejecutivo de la AAA, quejándose de que ni era nombrado al puesto de Gerente Técnico, ni recibía el ascenso prometido, por lo que solicitó que se cumplieran las promesas que se le hicieron. (Alegaciones 21 y 22 de la demanda).
El 3 de junio de 1996 el Sr. Rosario recibió una carta de la AAA informándole que su caso estaba siendo evaluado dentro un proceso de reorganización y ese mismo día fue notificado por el Director de Recursos Humanos, mediante carta, que se le trasladaba al Area de Ingeniería en el Edificio Central, efectivo el 6 de junio de 1996, sin afectarse su retribución o clasificación o su condición de trabajador regular de la agencia. (Alegación 23 de la demanda). El 10 de junio de 1996 el Sr. Rosario solicitó la reconsideración de esta decisión de traslado. La misma nunca fue atendida. (Alegaciones 25 y 26 de la demanda).
Una vez expuestos los hechos pertinentes al caso de autos, examinemos el derecho aplicable. El Art. 1868 del Código Civil, 31 L.P.R.A. see. 5298, en lo controlante, dispone que prescriben por el transcurso de un (1) año las acciones para exigir la responsabilidad civil por culpa o negligencia, desde que lo supo el agraviado. El Art. 1869 del mismo cuerpo legal, 31 L.P.R.A. see. 5299, establece *1080 que el término prescriptivo para toda clase de acciones, de no haber una disposición especial, se contará desde el día en que pudieron ejercitarse. Es por eso que el derecho aplicable y vigente en Puerto Rico es que el plazo prescriptivo para el ejercicio de las acciones de daños y peijuicios no comienza en el instante en que se produce la acción u omisión culposa o negligente, sino en el momento en que el agraviado conoce que ha sufrido un daño, y sabe, además quién es el responsable. Ojeda Ojeda v. El Vocero, Inc., 137 D.P.R. _ , 94 J.T.S. 131, a la pág. 331.
El término prescriptivo que establece el Art. 1868, supra, aplica a las acciones en reclamo de daños y perjuicios por un traslado ilegal y discriminatorio de un empleado público. En situaciones análogas los tribunales federales han usado el término estatuido en el Art. 1868 del Código Civil, supra, en acciones surgidas bajo la Ley de Derechos Civiles Federal, supra. Cintrón v. E.L.A., 127 D.P.R. 582, 590 (1990). En dicho caso se resolvió que en aquellas situaciones de destitución o cesantía de empleados públicos o cuando éstos son objeto de una acción discriminatoria, arbitraria o ilegal, ya sea despido, traslado, reclasificación, cambio de estatus, etc., el término presciptivo de un año empieza a decursar con la notificación al empleado de la actuación administrativa de la autoridad nominadora. Es desde ese momento que el empleado tiene o debe tener conocimiento de los daños causados por la actuación de la agencia. Cintrón v. E.L.A., supra. Las razones que se señalan para escoger este término de un (1) año en vez de uno mayor son que se mitiga la pérdida que puede haber sufrido un demandante y a la misma vez se limita la responsabilidad económica del Estado. Dicho término corto, actúa como catalítico para el inicio de reclamaciones. Acelerar tales acciones evita que el poder público se entronice de manera irrazonable en situaciones constitucionales impermisibles, y tiende a conservar la prueba en su mejor estado y libre de los embates del transcurso del tiempo. No olvidemos que en muchos casos las motivaciones que mueven al aparato gubernamental a aprobar ciertas reglamentaciones determinan su validez. Culebra Enterprises Corp. v. E.L.A. 127 D.P.R. 943, 954-955 (1991). En Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740, (1981), a la pág. 747, se dice que la razón de la brevedad del plazo de un (1) año reside, entre otros factores, en la necesidad de que el lapso de tiempo no confunda ni borre los esclarecimientos de la responsabilidad y las evaluaciones de su cuantía.
Nuestro Tribunal Supremo ha reconocido en distintas ocasiones que determinar el momento exacto en que se conoce o se debe conocer el daño constituye un delicado problema de prueba e interpretaciones. Rivera Encarnación v. E.L.A., 113 D.P.R. 383, 385 (1982). No es el instante de la producción del daño lo que determina el comienzo del término prescriptivo, sino el momento en que el perjudicado lo conoce. Colón Prieto v. Géigel, 115 D.P.R. 232, 243-247 (1984).
No cabe duda que la carga de la prueba recae sobre el demandante. La dificultad reside en la variedad de circunstancias en que se da el problema del conocimiento del daño. Hechos distintos requieren soluciones diversas. Los daños se manifiestan en formas distintas. Hay daños sucesivos o continuados; instantáneos y permanentes; hay daños que no se reflejan de inmediato; daños múltiples y daños desconocidos que se reflejan después del acto culposo. Estos son factores que se tienen que tomar en cuenta para determinar la fecha de conocimiento que se le puede imputar al reclamante o el agraviado. Esto se tiene que hacer caso por caso. Rivera Encamación v. E.L.A., supra, a la pág. 386.
Aplicando el derecho antes expuesto a los hechos del caso anteriormente relatados, resulta evidente que en dicha narración se establece sin duda alguna cuándo fue que el Sr. Rosario supo, primero que no iba a ocupar el puesto de Gerente Técnico de Area de Carolina y que por el contrario iba ser trasladado a un nuevo puesto al Area de Ingeniería en el Edificio Central. El 19 de abril de 1996, se podría razonablemente argumentar que aún le quedaban esperanzas. Para el 10 y el 20 de mayo del mismo año se puede observar que el Sr. Rosario está en eludas y exige su nuevo puerto y que se cumplan las promesas que le hicieron. Pero esas dudas, de haberlas, terminan o debieron haber terminado el 3 de junio de 1996, cuando el Sr. Rosario recibe la notificación formal de su traslado. Este hecho obviamente termina sus esperanzas a un nuevo puesto y al ascenso prometido. Tan es así que solicita la reconsideración de esa decisión. Dicha actuación del Sr. Rosario es demostrativa de que está descontento con esta decisión y es por eso que solicita la reconsideración de la misma.
No puede haber otra interpretación por lo que el año para presentar su acción, según el Art. 1868, supra, comenzó el 3 de junio de 1996. Delaware State College v. Ricks, 499 U.S. 250, 101 S.Ct. 498 (1980); Chardón v. Fernández, 454 U.S. 6, 102 S.Ct. 28 (1981). Al presentar su reclamo pasado el *1081 año sus causas de acción prescribieron, conforme al derecho antes expresado. Debemos señalar que el hecho de que la reconsideración no fuera contestada no interrumpe el término prescriptivo, debido a que es norma jurisprudencial reiteradamente sostenida que la causa de acción por derechos civiles no está sujeta a que primero se agoten los procedimientos administrativos. Cintron v. E.L.A., supra, a las págs. 594 a la 595.
En relación a la tercera transacción de personal estoy totalmente de acuerdo con la posición de la AAA. Según el Artículo 16 del Reglamento de Personal para Empleados Gerenciales de Carrera de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, se autoriza un procedimiento ante un Comité que se crea mediante dicho reglamento para atender casos como lo es esta transacción de personal que nos queda por discutir. Este reglamento también expresa que el Comité carecerá de jurisdicción si el empleado de carrera no presenta su apelación en la forma dispuesta, dentro de los diez días laborables siguientes a la fecha en que se le haya notificado por el Director Ejecutivo la acción o decisión de que se apela. El Sr. Rosario, al incumplir con este requisito, ya que nunca presentó una apelación en la forma que establece el referido reglamento, privó al Comité de Apelaciones de jurisdicción sobre su reclamo de que no se le concedió el ascenso por motivaciones políticas.
Por lo aquí expresado, confirmaría la sentencia apelada modificando la misma en cuanto al tercer reclamo y no mantendría jurisdicción según lo determinó el Tribunal de Primera Instancia y desestimaría la demanda en su totalidad.
ROBERTO CORDOVA ARONE
Juez de Apelaciones