López Vilanova, Jueza Ponente
*716 TEXTO COMPLETO DE LA SENTENCIA
Los recursos consolidados de epígrafe recurren de la sentencia parcial y resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el 16 de abril de 2004.
En virtud de esa sentencia, dicho foro determinó que, a tenor con el Artículo 1802 del Código Civil de Puerto Rico, los allí demandados y aquí apelantes Osvaldo Ortiz Medina y Juan Jesús Ramírez Rivera, eran solidariamente responsables hacia los allí demandantes Lund-Rodríguez, Esteras Camacho y Rafael Almodóvar Vázquez por sí y en representación de su esposa Ella Burke, por los actos y omisiones negligentes en la redacción, preparación de las escrituras de compraventa en controversia y la presentación ante el Registro de la Propiedad de las mismas.
El recurso de apelación KLAN-04-00809, se presentó ante el Tribunal de Primera Instancia el 25 de junio de 2004, por los apelantes, Ledo. Osvaldo Ortiz Medina, la Sra. Maricarmen Canabal López y da Sociedad Legal de Gananciales compuesta por ambos.
Por su parte, Juan Jesús Ramírez Rivera, Angélica I. Ramos y la Sociedad Legal de Gananciales compuesta por ambos, presentaron el recurso KLAN-04-00852 el 16 de julio de 2004, ante este Tribunal.
Todas las partes han presentado sus respectivos alegatos. Contamos además con una transcripción que consta de 475 páginas. Estando en posición de resolver, a ello procedemos. Expongamos el extenso trámite de este caso ante el foro recurrido.
I
Las controversias del caso de autos se remontan al 9 de octubre de 1975, cuando se otorgó la escritura número 58 ante el notario Juan Jesús Ramírez Rivera, (apelante en el caso KLAN-04-00852), donde compareció el Sr. Enrique Cario Aymat por sí y en representación de su esposa la Sra. Dora Díaz Díaz. Dicha escritura tuvo el propósito de expedir un pagaré hipotecario y constituir una hipoteca voluntaria a favor de Enrique Cario Aymat y Dora Díaz Díaz. El pagaré estaba garantizado con una hipoteca sobre la propiedad inmueble expresada en la propia escritura 58 y que presenta la siguiente descripción registral:
“ — RUSTICA: Porción de terreno radicada en los barrios Boquerón, Salinas y Llanos Costa del Municipio de Cabo Rojo, Puerto Rico, con una cabida de CINCO CUERDAS, equivalentes a una hectárea, noventa y seis afeas, cincuenta y una centiáreas y noventa y cincomiliares, colindando por el NORTE, en una distancia de noventa y cuatro metros y cincuenta y dos centímetros con una servidumbre comunal de diez metros de ancho que la separa del remanente de la finca de la cual se segrega; por el SUR, en una distancia de noventa y siete metros con treinta centímetros con terrenos propiedad del señor Oscar Morales; por el Este, en una distancia *717 de doscientos cinco metros con siete centímetros con el remanente de la finca de la cual segrega, y por el Oeste, en una distancia de doscientos cinco metros con diecisiete centímetros con terrenos de señor Eric Carlo.-
—Dicha propiedad se encuentra inscrita al folio número Ciento Noventa y Tres (193), del Tomo Doscientos Cuatro (204), Finca número Cinco mil novecientos setenta y cinco (5,975), en Cabo Rojo, Puerto Rico."
El 19 mayo de 1978 se otorgo la escritura número 178 de Compraventa ante el notario Juan Jesús Ramírez Rivera en la cual la E. Carlo A. Enterprises, Inc. representada por la Sra. María M. Camacho Hernández, compró a los esposos Carlo-Díaz la propiedad descrita previamente.
En esa misma fecha, 19 de mayo de 1978, se otorgó ante el notario Ramírez Rivera la escritura de compraventa número 179 en la cual E. Cario Enterprises, representada nuevamente por la Sra. María M. Camacho Hernández, vendió al Sr. Santiago Rodríguez, su esposa y al Sr. William Rodríguez Camacho, un condominio de aproximadamente 1/5 parte de la finca de cinco cuerdas arriba descrita. En la escritura se expresó que dicha participación es de tres mil novecientos treinta, diecinueve mil seiscientos cincuenta y uno avas partes (3,930/19,651). Además se expresó que la misma “estaba libre de cargas y gravámenes, excepto aquellas servidumbres, y/o cargas, y/o gravámenes, y/o restricciones que por su naturaleza pudiera tener". Disponen, además, “las partes manifiestan, que no se ha hecho estudio de titulo y que no lo desean”.
Allá para el 12 de enero de 1979, se otorgó la escritura número 6 de compraventa ante el notario Ramírez Rivera, parte apelante en el recurso KLAN-04-00852, en la cual E. Cario A. Enterprises, representada por la Sra. María M. Camacho Hernández, vendió a los aquí apelados, Rafael Almodovar y su esposa Ella Burke, aproximadamente 2/5 partes de la finca de cinco cuerdas. En la escritura, dicha participación es representada como un condominio de siete mil ochocientos sesenta, diecinueve mil seiscientos cincuenta y dos (7,860/19,652) avas partes. Se expresó en la misma que la propiedad se encontraba libre de cargas y gravámenes.
El 11 de abril de 1979 se otorgó la escritura número 207 ante el notario Ramírez Rivera en la cual se realizó una compraventa donde E. Cario A. Enterprises, representada nuevamente por la Sra. María M. Camacho Hernández, le vendió a Wilfredo Almodovar y María Cintrón un condominio de aproximadamente 1/5 parte de la finca de cinco cuerdas.
Al presentarse en el Registro de la Propiedad las escrituras número 178, 179 y 180, éstas fueron devueltas el 31 de marzo de 1980, por el Registrador de la Propiedad, al no acreditarse en las mismas la facultad de la Sra. María M. Camacho Hernández para representar a E. Cario A. Enterprises, Inc.
El 12 de abril de 1982, se otorgó la escritura de compraventa número 74 en la cual E. Carlo A. Enterprises, representada en el negocio jurídico por la Sra. María M. Camacho Hernández, le vendió a los aquí apelados Kenneth Earll Lund y a su esposa Carmen Julia Rodríguez un condominio de aproximadamente 1/5 parte de la finca de cinco cuerdas aquí descrita. Su participación en dicho bien inmueble, según se hizo constar en la escritura pública, es de tres mil novecientos treinta, diecinueve mil seiscientos cincuenta y uno (3,930/19,651) avas partes. Además, nuevamente se hizo constar que “la propiedad está libre de cargas y gravámenes”.
El 29 de mayo de 1984, se otorgó la escritura de compraventa número 21. Esta escritura fue otorgada por el notario José Luis Rodríguez Jiménez. En la misma, el Sr. William Rodríguez Camacho vendió a los apelados del recurso de epígrafe, Juan Esteras Burgos y Carmen Gloria Camacho Fontañez, su participación en el bien inmueble. En la escritura se dio expresión a los efectos que el bien inmueble estaba libre de cargas y gravámenes.
*718 En la fecha del 15 de diciembre de 1993, el notario Osvaldo Ortiz Medina, apelante en el recurso KLAN-04-00809, otorgó la escritura número 51 de compraventa en la cual compareció como vendedora la Sra. Dora Díaz Díaz por sí y en representación de su esposo, el Sr. Enrique Cario Aymat y los aquí apelados el Sr. Keneth Eral Lund y la Sra. Carmen Julia Rodríguez como compradores. En dicha escritura, los comparecientes acordaron la compraventa de una participación alícuota en común pro indiviso de una quinta parte (1/5) equivalente al veinte por ciento (20%) de la propiedad descrita previamente.
Además, en dicha escritura se hizo constar que la propiedad se encontraba libre de cargas y gravámenes “exceptuando aquellas servidumbres y/o cargas y/o gravámenes y/o restricciones que por su naturaleza pudiere tener”.
Por otra parte, el 6 de marzo de 1996, el notario Osvaldo Ortiz Medina otorgó la escritura número 9 de poder especial en la cual los comparecientes Sr. Rafael Almodóvar Vázquez y su esposa la Sra. Ella Burke, otorgan un poder a favor de la Sra. Lidia Vázquez Seda para que comparezca a su nombre en escritura de compraventa y firme la planilla informativa y cualquier otro documento relacionado con dicha compraventa.
La escritura de compraventa en la cual compareció la Sra. Lidia Vázquez Seda en representación de los esposos Rafael Almodóvar Vázquez y Ella Burke como compradores, se otorgó ante el notario Osvaldo Medina Ortiz el 24 de septiembre de 1996. En la misma compareció la Sra. Dora Díaz Díaz por sí y en representación de su esposo, el Sr. Enrique Cario Aymat, como vendedores. En dicha escritura se dispuso que la “propiedad antes descrita se halla afecta a una primera hipoteca a favor del Banco Bilbao Bizcaya, el cual ha obtenido sentencia en cobro de dinero conforme al caso CD noventa y cuatro guión diez veintiuno (CD 94-1021) en el Tribunal de Distrito de Cabo Rojo”.
Para el 2 de mayo de 1997, el Tribunal de Primera Instancia, Sala de Cabo Rojo, expidió un mandamiento de ejecución de sentencia acorde con la sentencia dictada previamente el 24 de enero de 1997, y notificado su archivo en autos el 24 de enero de 1997. En dicho mandamiento de ejecución, el Tribunal ordenó al alguacil que diera venta de dicho inmueble en pública subasta.
En consecuencia a lo anterior, el 3 de octubre 1997, el Sr. Ramón Augusto Martínez Torres compareció ante el notario Francisco J. Vilanova Montalvo para otorgar la escritura número 84 de cancelación de hipoteca. En dicha escritura se hizo constar que “el dominio de la referida propiedad inmueble consta inscrito a favor del compareciente del Sr. Martínez Torres quien la adquirió en subasta pública de conformidad con la Escritura número 82 sobre venta judicial suscrita en Cabo Rojo, Puerto Rico, el día 1 de octubre de 1997” ante el mismo notario.
En el ínterin, Enrique Cario Aymat y Dora Díaz Díaz recurrieron mediante certiorari, ante este Tribunal. Solicitaron la revisión y revocación de una resolución dictada el 20 de mayo de 1998, por el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Cabo Rojo, en virtud de la cual se declaró no ha lugar la solicitud de relevo de sentencia promovida por éstos. Este Tribunal denegó lo solicitado y confirmó el dictamen recurrido.
Lnconformes, Cario Aymat y la Sra. Díaz Díaz recurrieron al Tribunal Supremo solicitando la revisión de la sentencia emitida por este Tribunal. Mediante sentencia de 19 de enero de 2000, el Tribunal Supremo confirmó la sentencia emitida por el entonces Tribunal de Circuito de Apelaciones.
El 15 de mayo de 2000, el notario y apelante de autos, Osvaldo Ortiz Medina, otorgó la escritura número 19 la cual tituló acta aclaratoria. En la misma compareció la Sra. Dora Díaz Díaz por sí y en representación de su esposo, el Sr. Osvaldo Cario Aymat, para realizar'unas aclaraciones en tomo a las escrituras número 179 del 19 de mayo de 1978 y la escritura número 207 del 11 de abril de 1979 otorgadas ante el notario público Juan Jesús *719 Ramirez Rivera. Dichas aclaraciones consistían en hacer constar que por “error involuntario”, en dichas escrituras se expresó que la Sra. Maria M. Camacho Hernández compareció a nombre de la corporación E. Carlo A. Enterprises cuando en dichas escrituras debió leer que comparecía a nombre de los comparecientes de dichas escrituras, el Sr. Dora Díaz Díaz y Enrique Carlo Aymat.
El 21 de agosto de 2000, la Sra. Dora Díaz Díaz compareció nuevamente ante el notario Ortiz Medina para otorgar una Instancia para cancelar anotación de demanda en el caso CD94-1021.
En vista del desarrollo que tomaron los hechos ¿n este caso, se presentó demanda el 5, de octubre de 1998, ante el Tribunal de Primera Instancia, Sala Superior de Mayagüez. En dicho caso se constituyeron como parte demandante, el Sr. Juan Ramón Esteras Burgos, su esposa la Sra. Carmen Gloria Camacho y la Sociedad Legal de Gananciales constituida por ambos; el Sr. Kenneth Eral Lund, su esposa, la Sra. Carmen Julia Rodríguez y la Sociedad Legal de Gananciales por ambos constituida y el Sr. William Rodríguez Camacho, su esposa, la Sra. Sandra Avilés Rodríguez, y la Sociedad Legal de Gananciales constituida por ambos.
La demanda se instó contra el Sr. Enrique Cario Aymat, su esposa Dora Díaz Díaz, y la Sociedad Legal de Gananciales; los aquí apelantes Juan Jesús Ramírez Rivera, su esposa, Osvaldo Ortiz Medina, su esposa y la Sociedad Legal de Gananciales constituida por ambos matrimonios, y E. Cario Enterprises, Inc; María Camacho Hernández, su esposo Gaspar Martínez Crespo, y la Sociedad Legal de Gananciales constituida por ambos.
En la demanda, los demandantes alegaron que los codemandados Enrique Cario Aymat, Dora Díaz Díaz, María M. Camacho Hernández y el Ledo. Juan Jesús Ramírez Rivera, sabían que la venta a los terceros no lograrían inscripción registral. Ello, por ser dichas ventas en comunidad de bienes de fincas rurales, contrario a la ley, y el otorgamiento de escrituras de compraventa en tales casos era un subterfugio ineficaz para el traspaso de titulo. Además, alegaron que los codemandados conocían que se había otorgado un pagaré hipotecario que grababa la totalidad de la finca y ocultaron dicho hecho a los compradores.
Los codemandandes y aquí apelados alegaron, además, que el codemandado y apelante de autos, Ledo. Osvaldo Ortiz Medina, de forma culposa y negligente incumplió con su obligación notarial de informar a todos los otorgantes de la existencia del gravamen hipotecario que gravaba la propiedad y de instruir a todos de la conveniencia de realizar, antes del otorgamiento, un estudio registral del inmueble objeto de compraventa y hacer constar tal advertencia en la escritura.
Así también alegaron el incumplimiento contractual del notario apelante antes mencionado al presentar tardíamente en el Registro de la Propiedad las escrituras otorgadas.
Por su parte, el apelante Osvaldo Ortiz Medina presentó el 14 de enero de 1999, su contestación a demanda. Esta incluyó una Reconvención, la cual posteriormente desistió sin perjuicio.
Más tarde, la parte aquí apelada presentó Primera Demanda Enmendada en la cual no compareció como parte demandante el Sr. William Rodríguez Camacho, su esposa la Sra. Sandra Avilés Rodríguez y la Sociedad Legal de Gananciales compuesta por ambos. Asimismo, en dicha demanda se desistió contra la Sra. María M. Camacho Hernández, su esposo Gaspar Martínez Crespo y la Sociedad Legal de Gananciales constituida por ambos.
Luego de los trámites procésales de rigor, se dispuso por el Tribunal recurrido el fraccionamiento del caso en cuanto a la negligencia y los daños. A esos efectos, se celebró la vista evidenciara los días 26, 27, 29 y 30 de agosto de 2002, y el 14 de febrero de 2003, donde las partes tuvieron la oportunidad de presentar su prueba documental y testifical.
*720 Celebradas la vista de negligencia y sometido su caso por las partes, el Tribunal, Hon. Winston Laboy Milán, juez, mediante sentencia parcial y resolución, determinó que según los hechos probados ante sí, “todos los demandados son solidariamente responsables hacia los demandantes Lund-Rodríguez, Esteras-Camacho, y Almodóvar”. Dispuso que los notarios codemandados y aquí apelantes, Ledo. Ramírez Rivera y Ledo. Ortiz Medina, faltaron a la imparcialidad que define el notario, incurrieron en negligencia y faltaron a los deberes del notario en la redacción de una escritura pública. 
Mediante resolución, el Tribunal dispuso la celebración de vista de daños contra todos los demandados en cuanto a los demandantes Lund-Rodríguez, Esteras-Camacho y Rafael Almodóvar. En cuanto a los demandantes Rodríguez Avilés, el Tribunal concluyó que no han sufrido daño alguno, por lo que declaró no ha lugar la demanda en cuanto a estos últimos demandantes.
Ante las determinaciones del foro de instancia, los codemandados y aquí apelantes, Ledo. Osvaldo Ortiz Medina y Ledo. Juan Jesús Ramírez Rivera, presentaron recursos apelativos por separado, los cuales fueron identificados como KLAN-04-00809 y KLAN-04-00825, respectivamente.
En dichos recursos apelativos, los apelantes presentan varios señalamientos de error común a ambos recursos los cuales pueden resumirse de la siguiente forma:

“A. Erró el tribunal de instancia al determinar que los apelantes Ledo. Osvaldo Ortiz Medina y Ledo. Juan Jesús Ramírez Rivera habían sido negligentes.

B.Erró el foro recurrido en la apreciación de la prueba y en la estimación de hechos probados. ”

Así mismo, los apelantes han hecho señalamientos de error que surgen de circunstancias propias y particulares. En el caso del apelante Ledo. Osvaldo Ortiz Medina, éste expresa los siguientes señalamientos de error:

“A. Erró el Tribunal de Primera Instancia al permitir que Ramón Augusto Martínez, quien no era ni testigo ni parte en este caso, testificara sorpresivamente al ser llamado por el mismo tribunal al estrado convirtiendo al tribunal en parte y juez al mismo tiempo y luego hacer determinaciones de hechos a base de dicho testimonio en contra del Ledo. Osvaldo Ortiz Medina.

B. Erró el Tribunal al no haber desestimado la presente acción bajo la regla 39.2 (c) de procedimiento civil en tanto los demandantes no probaron ninguna de sus alegaciones contra el Ledo. Osvaldo Ortiz Medina.

C. Erró el Tribunal de Primera Instancia al imponer responsabilidad contra Maricarmen Canabal López en su carácter personal y la sociedad de gananciales cuando se hace alegación alguna en la demanda en su contra ni desfiló prueba alguna que la vinculara con los hechos de este caso.

D. Erró el Tribunal de Primera Instancia al no hacer una determinación de negligencia comparada contra los demandantes bajo el Art. 1802 del Código Civil. ”

Por su parte, el apelante Ledo. Juan Jesús Ramírez Rivera formuló el siguiente señalamiento de error:

“A. Erró el Tribunal de Primera Instancia al no determinar que la acción de los demandantes contra el demandado-apelante, Juan Jesús Ramírez y su esposa y la sociedad legal de gananciales, estaba prescrita. ”

Examinemos sus reclamos.
*721 II
Como uno de los señalamientos de error presentados en común por los apelantes, se cuestiona que erró el tribunal recurrido al encontrarles negligentes y responsables solidarios.
Como es norma ampliamente conocida, la procedencia de una acción de daños y perjuicios al amparo del Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141, depende de que el demandante establezca por preponderancia de la prueba los elementos constitutivos de la misma. Dichos elementos se componen de: 1) la realidad del daño sufrido; 2) la existencia de un nexo causal entre el daño y la acción u omisión cometida, y 3) que este acto u omisión fue culposo o negligente. Pablo Pons v. Carl R. Engerbretson, 2003 J.T.S. 151; Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990).
Un elemento esencial de la responsabilidad por culpa o negligencia dispuesta por el Artículo 1802, es el factor de previsibilidad y el riesgo involucrado en el caso específico. Para la aplicación del grado de previsibilidad requerido en las circunstancias particulares de los casos, dependerá del estándar de conducta aplicable. Pablo Pons v. Carl R. Engerbretson; Elba A.B.M. v. U.P.R., supra.
El deber de cuidado exigido se divide en dos vertientes 1) la obligación de anticipar, y 2) la obligación de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Ginés Meléndez v. Autoridad de Acueductos, 86 D.P.R. 518 (1962).
En el caso especifico de responsabilidad civil por omisión, la ocurrencia de ésta se da cuando existe un deber de actuar. Dicho deber debe ser impuesto o reconocido por ley, y que ocurra el quebrantamiento de ese deber. Elba A.B.M. v. U.P.R., supra.
En el recurso de epígrafe se recurre de una sentencia parcial y resolución emitida por Tribunal de Primera Instancia en la cual encontró responsables civilmente á los notarios aquí apelantes por las actuaciones negligentes en que incurrieron en la redacción de las escrituras y negocios jurídicos en donde estuvo envuelto el bien inmueble descrito anteriormente.
Un notario es un profesional del derecho que ejerce una función pública de “inestimable importancia en los negocios jurídicos que ante él se otorguen”. In re: Feliciano Ruiz, 117 D.P.R. 269 (1986).
En dicho caso, el Tribunal Supremo de Puerto Rico expresó lo siguiente:
“El notario ejerce una función clave de inestimable importancia en los negocios jurídicos. Es custodio de la fe pública. Al autorizar un documento, presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. La investidura que conlleva la fe pública notarial va acompañada de una presunción controvertible a los actos que ve y oye —vidit et audit— de que lo allí consignado es legal y verdadero. En resumen, la dación de fe está avalada por la confianza de que los hechos jurídicos y circunstancias que acredite fueron percibidos con sus sentidos... ”. Citas omitidas...Es evidente, pues, que la fe pública constituye la espina dorsal del cuerpo notarial. In Re: Feliciano Ruiz, supra, a la pág. 275.
Por ende, la función y los deberes de un notario trasciende la mera legalización de firmas y la preparación técnica de los negocios jurídicos otorgados y llevados ante sí. La función notarial es personal, indelegable e indivisible y “presupone la creación de un nivel de entendimiento y comunicación entre el fedante y los otorgantes que le permite a éstos formar una racional conciencia del acto en que concurren. La fe pública tiene como base la voluntad ilustrada de los contratantes; no puede ser fruto de la ignorancia y la obscuridad”. In Re: Meléndez Pérez, 104 D.P.R. 770, 775-76 (1976). (Énfasis Suplido).
*722 A tenor con la responsabilidad civil que dispone el Artículo 1802 del Código Civil de Puerto Rico, supra, un notario tiene el indeclinable deber y obligación de propiciar y cerciorarse de que los otorgantes ante él realicen el negocio jurídico en donde den su consentimiento de manera informada y a conciencia. Dicho “estado de conciencia” se obtiene cuando el notario cumple con su deber y obligación, y da las explicaciones, advertencias, reservas y aclaraciones necesarias que hagan falta para lograr el consentimiento informado de todos los otorgantes. In Re: Meléndez Pérez, supra.
Más aún, la autorización de una escritura pública tiene cuatro deberes principales: 1) indagar la voluntad de los otorgantes; 2) formular la voluntad indagada; 3) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; 4) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias, del negocio y se den cuenta de los riesgos que corren en celebrarlo. Chévere v. Cátala, 115 D.P.R. 432 (1984).
Dicho deber no emana o nace de un contrato entre notario y cliente, ni de la “deontología”, sino de un “deber oficial en el interés de terceros, y por eso no está sometido ni a la disposición del notario ni a la de los otorgantes. ” Chévere v. Cátala, supra, a la pág. 438.
En el caso de autos, la pmeba testifical que desfiló ante el tribunal de instancia y que hemos tenido el beneficio de analizar, demuestra claramente la negligencia de los aquí apelantes en el otorgamiento, corrección y posterior presentación en el Registro de la Propiedad por parte del Ledo. Juan Jesús Ramírez Rivera y el Ledo. Osvaldo Ortiz Medina.
Los actos y omisiones negligentes del apelante, Ledo. Ramírez Rivera, se remontan a la fecha del otorgamiento de la escritura número 179 en la cual compareció la Sra. María M. Camacho Hernández en representación de E. Carlo A. Enterprises. En dicha escritura compareció la Sra. Camacho Hernández y el notario otorgó la misma sin acreditar las facultades representativas de la misma. Además, teniendo conocimiento del gravamen hipotecario que afectaba el bien inmueble objeto de dicha compraventa, se hace constar en la escritura que la misma está libre de cargas y gravámenes. 
Ciertamente, de un análisis y una evaluación del tracto fáctico del caso de epígrafe desde el otorgamiento de las escrituras en 1978, denota que el Ledo. Ramírez Rivera no tuvo el cuidado, la diligencia que requiere la profesión del notariado puertorriqueño en el otorgamiento de las escrituras otorgadas. Consecuencia clara y solemne de esto es la denegatoria del Registrador de la Propiedad a inscribir las escrituras en donde había comparecido la Sra. María M. Hernández Camacho.
Como parte del testimonio vertido por el Ledo. Ramírez Rivera durante la vista en el tribunal recurrido éste indicó que no revisó en sus “records” si el bien inmueble está gravado o no, y por consiguiente no lo hizo constar en la escritura porque, según su testimonio, cuando se otorgaron estas escrituras la entidad que financiaba hacía el estudio de titulo y era la que controlaba los gravámenes que tenía la finca y se libraba.
De igual forma, de la prueba testifical presentada ante el foro recurrido, se puede concluir que el Ledo. Osvaldo Ortiz Medina fue negligente en su desempeño notarial.
El Ledo. Ortiz Medina atestó, en el caso de autos, que su participación en esta escritura era con el propósito de resolver una serie de defectos subsanables que habían sido señalados por el Registrador de San Germán. 
Ciertamente, la participación del notario Ortiz Medina en los hechos del recurso se extendió mas allá de una mera corrección de defectos subsanables en las escrituras otorgadas por el Ledo. Ramírez Rivera. El Ledo. Ortiz Medina otorgó escrituras en donde comparecieron los aquí apelados, esposos Lund-Rodríguez. Además sirvió como “facilitador” para inscribir unas escrituras en el Registro de la Propiedad de los apelados, esposos *723 Esteras-Camacho. 
Al ser el Ledo. Ortiz Medina un “facilitador” para la inscripción de las escrituras, surgió entre el notario y los esposos Esteras-Camacho un contrato de mandato. Esto en virtud de que la presentación de documentos en el Registro de la Propiedad constituye una obligación contractual convenida por las partes, la cual no forma parte de las responsabilidades y deberes inherentes al ejercicio de la notaría. Rosas González v. Acosta Pagan, 134 D.P.R. 720 (1993).
El notario Ortiz Medina faltó a sus deberes como notario al no dar las advertencias y aclaraciones correspondientes en cuanto al gravamen hipotecario que cargaba el bien inmueble cuando se otorgó ante él la escritura número 37, el 24 de septiembre de 1996. En dicha escritura de compraventa compareció la Sra. Lidia Vázquez Seda en representación de los esposos aquí apelantes, Rafael Almodóvar Vázquez y la Sra. Ella Burke.
Al otorgarse dicha escritura es que los esposos Almodóvar-Burke advienen en conocimiento del gravamen hipotecario que gravaba el bien inmueble objeto de esta escritura y de los otorgamientos anteriores que dan base a la presentación de la controversia del recurso ante nos. 
De igual manera fue negligente el apelante, notario Ortiz Medina, en la tramitación de la firma y legalización del poder enviado al Sr. Rafael Almodóvar a su residencia en Nueva York, al enviarle un documento en español y una carta explicativa en inglés lo que denota claramente que el notario sabía que el Sr. Almodóvar no conocía el idioma español, por lo que no procedía el otorgamiento del documento. 
Por su parte, el apelante, Ledo. Ramírez Rivera, argumenta que los demandantes no tienen causa de acción contra él, pues al momento de otorgarse las escrituras de compraventa no existía la obligación de realizar un estudio de título y que de ellas surge que el Notario hizo a los demandantes las advertencias legales pertinentes, por lo que no incurrió en negligencia. 
No podemos estar de acuerdo con dicho argumento. El ejercicio del notariado no puede enmarcarse en responsabilidades temporales y en la aplicación o no de normas jurisprudenciales. Las responsabilidades y deberes del notario son claras, no importa el tiempo o las circunstancias que rodeen un otorgamiento.
El Tribunal Supremo de Puerto Rico, previo al otorgamiento de las escrituras otorgadas por el Notario Ramírez Rivera, había realizado las siguientes expresiones en el caso In re: Meléndez Pérez, supra, a la pagina 775.

“[e]l notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos ininteligibles, el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico, pero vacío de la inteligencia y comprensión de los firmantes, está con desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza publica. En la practica notarial, con rareza se dan las circunstancias de urgencia e imprevisión que a veces frustran la abogacía, por lo que son contadas las ocasiones en que un notario pueda acogerse al palio de olvido, inadvertencia o negligencia excusable. El consejo del abogado notario debe guiar la redacción del documento público y dar luz en el acto final del otorgamiento. ”

El aquí apelante, Ramírez Rivera, otorgó unas escrituras en la cual tenía el pleno y total conocimiento de la existencia de un gravamen hipotecario y nó lo hizo constar en la escritura, ni lo informó a los otorgantes como era su deber. Dicho Notario había otorgado la escritura número 58 de 9 de octubre de 1975, en la cual el Sr. Enrique Carlo Aymat y su esposa, la Sra. Dora Díaz Díaz, constituyeron una hipoteca garantizada sobre la *724 propiedad inmueble. No es excusa el hecho de que existiese la práctica, según testificó el apelante, a los efectos que “cuando se otorgaron estas escrituras, la entidad que financiaba hacía el estudio de titulo y era la que controlaba los gravámenes que tenía la finca y se libraba”. El Notario tenía el deber de informar a los otorgantes la existencia de dicho gravamen hipotecario para que los mismos pudieran dar un consentimiento informado en el otorgamiento de la escritura.
Ante esto, es clara la expresión del Tribunal Supremo al efecto de que “el notario que falla a la sociedad y a los que ante él comparecen en este fundamental aspecto de aclaración e ilustración, será coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador”. In Re: Meléndez Pérez, supra, en la página 776.
Por lo anterior, entendemos que lo notarios aquí apelantes fueron negligentes en su deber y desempeño notarial según determinó el Tribunal de Instancia recurrido.
III
El apelante notario, Ramírez Rivera, señala como error que la acción en contra de él, su esposa y la Sociedad Legal de Gananciales, estaba prescrita. No estamos de acuerdo.
La prescripción como materia sustantiva y no procesal se rige por los principios del derecho civil. El fundamento de la prescripción descansa en poner fin a la inseguridad jurídica y su propósito es el castigar la inercia en el ejercicio de los derechos, asegurar el señorío de las cosas, y evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones, hecho que podría dejar a una de las partes en estado de indefensión. Vera Morales v. Bravo Colón, 2004 J.T.S. 40, 161 D.P.R. _ (2004); Ricardo Nazario v. Estado Libre Asociado de Puerto Rico, 2003 J.T.S. 116, 159 D.P.R. _ (2003).
El plazo prescriptivo de un año para el ejercicio de las acciones de daños y perjuicios por actos u omisiones de naturaleza culposa o negligente comienza a correr desde el momento en que el (los) perjudicado(s) conoce que ha sufrido un daño. Ojeda v. El Vocero de P.R., 137 D.P.R. 315 (1994).
El término antes aducido de un año tiene su procedencia del Artículo 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5298. Para hacer una determinación en cuanto a cuándo comienza a decursar el referido plazo, se ha establecido que el momento que se toma como punto de partida es la fecha en que el (los) perjudicados conoció del daño, quién fue el autor del mismo, desde que éste conoce los elementos necesarios para poder ejercitar efectivamente su causa de acción. Vera Morales v. Bravo Colon, supra.
En el recurso de epígrafe, la parte aquí apelada presentó su demanda el 5 de octubre de 1998. Para poder determinar cuándo las partes tuvieron conocimiento del daño, es preciso referimos al testimonio vertido por la aquí apelada, la Sra. Carmen Gloria Camacho. En dicho testimonio, la Sra. Camacho expresó que en 1993, el aquí apelado Kenneth Lund se comunica con la testigo y le informa que el Ledo. Osvaldo Ortiz Medina era el abogado del Dr. Carlo y que “estaban llamando a todos los participantes para darle las escrituras registradas ante el Registro de la Propiedad”. 
La Sra. Camacho además testificó que luego de entregar las escrituras al licenciado Ortiz Medina, visitó “por varios meses en el transcurso de los años la oficina del Licenciado para ver el status de [su] escritura, pero nunca surgió nada”. 
Las partes tuvieron conocimiento de la situación en cuanto al gravamen hipotecario y la venta de la propiedad en pública subasta para el año 1997. Esto surge del testimonio de la Sra. Camacho que a continuación citamos:
*725 “ — Ledo. Lora:- ¿Qué le dijo el Ledo. Ortiz Medina?

—Sra. Camacho: - Pues, él nos hacía ver que la escritura estaba en el registro y que eventualmente, pues, nos entregaría a cada uno nosotros nuestra escritura.

—Ledo. Lora: ¿Y qué ocurre después de eso?

—Sra. Camacho:- Luego de después de eso, en 97 todavía no nos habían entregado la escritura y ahí es que surge una subasta de la finca que nosotros tenemos. Nos enteramos otra vez por vía telefónica por medio del señor Lund donde nos llama y nos dice que hay una persona que está reclamando esos terrenos por medio de él, ya que lo él lo había comprado en una subasta en Cabo Rojo. ” (Énfasis nuestro) 
De igual manera, de una evaluación del testimonio prestado por el Sr. Kenneth Lund Raver, podemos concluir que la fecha en que las partes tuvieron conocimiento del daño fue el 12 de octubre de 1997. Esto como consecuencia de la visita del Sr. Ramón Martínez Torres a la residencia del Sr. Lund, en la cual le entregó el mandamiento de ejecución de sentencia. Es preciso señalar que la certificación del alguacil del mandamiento de ejecución tiene fecha del 3 de octubre de 1997. 
Asimismo, el aquí, apelado Rafael Almodóvar Vázquez, según surge de su testimonio, adivinó en conocimiento de la situación dañosa una vez el Sr. Lund le comunicó a éste que “había una persona que había comprado la propiedad". Esto en referencia al Sr. Ramón Martínez Torres. 
En vista de lo anterior, entendemos que la acción no estaba prescrita en cuanto al apelante Ramírez Rivera, su esposa y la sociedad legal de gananciales compuestas por ellos. Esto por la omisión del notario al no expresar la existencia de un gravamen hipotecario al otorgar las escrituras en 1978. Dicha omisión encara responsabilidad civil según hemos expresado antes.
Ciertamente, los apelantes tomaron conocimiento de los daños con posterioridad al 12 de octubre de 1997. Vera Morales v. Bravo Colon, supra; Ricardo Nazário v. Estado Libre Asociado de Puerto Rico, supra.
IV
El apelante Ortiz Medina señala como error la determinación del Tribunal de Instancia al imponer responsabilidad en contra de la apelante Maricarmen Canabal López en su carácter personal y la Sociedad Legal de Gananciales cuando no se hace alegación alguna en su contra ni se desfiló pmeba alguna que la vinculara con los hechos del caso.
La actuación u omisión negligente de uno de los cónyuges puede acarrear responsabilidad para la sociedad legal de gananciales cuando de los hechos particulares del caso se desprende que la actividad del cónyuge que produjo el daño aprovechó económicamente a la sociedad compuesta por los cónyuges. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996); Orta v. Padilla Ayala, 131 D.P.R. 227 (1992); Cruz Viera v. Registrador 118 D.P.R. 911 (1987).
Como regla general, el pago de multas y condenas pecuniarias que se le impongan a uno de los cónyuges no será de cargo de la sociedad legal dé gananciales. Ahora bien, en casos de responsabilidad civil extracontractual, la responsabilidad será personal del cónyuge o de la sociedad legal de gananciales según los hechos que hayan dado lugar a la misma. Quiñones López v. Manzano Pozas, supra, en la página 169.
Como excepción a la norma antes expresada, en caso de que el cónyuge demandado no tenga bienes propios con qué responder o cuando éstos sean insuficientes, podrá repetirse contra los bienes pertenecientes a la sociedad legal de gananciales y ésta responde de manera subsidiaria previa excusión de bienes privativos del *726 cónyuge legalmente responsable. Quiñones López v. Manzano Pozas, supra, en la página 170.
En el caso de autos, el notario Osvaldo Ortiz Medina ejercía como notario en el pueblo de Cabo Rojo y fue contratado por los esposos Enrique Carlo Aymat y Dora Díaz Díaz para que les brindara servicios profesionales. 
No habiéndose presentado prueba de la existencia de capitulaciones matrimoniales en donde se dispusiera de un régimen económico matrimonial distinto a la Sociedad Legal de Gananciales, debemos presumir la existencia de esta última. Además, la sociedad legal de gananciales se beneficiaba por las gestiones profesionales del apelante. Dichas gestiones, además de ser negligentes, aprovecharon económicamente a la masa ganancial. Keyla Rosario v. Distribuidora Kikuet, 2000 J.T.S. 118; Lugo Montalvo v. González Mañón, 104 D.P.R. 372, 378 (1978).
Por su parte, la co-apelante, Sra. Maricarmen Canabal López, como coadministradora de la sociedad legal de gananciales, tenía y tiene que ser parte en el pleito, ya que al beneficiarse la sociedad legal de gananciales de los actos negligentes que ocasionaron el daño a los aquí apelados, llegado el momento de ejecutar la sentencia, ella adquiere un interés en los procedimientos legales. Mas aún cuando la sociedad legal de gananciales es una entidad separada y distinta de los cónyuges, que no absorbe la personalidad individual de los cónyuges que la componen. Universal Funding Corp v. Registrador, 133 D.P.R. 549 (1993).
V
Como parte de los señalamientos de error hechos por el apelante Ortiz Medina, éste señala que:

“erró el Tribunal de Primera Instancia al permitir que Augusto Martínez, quien no era ni testigo ni parte en este caso, testificara sorpresivamente al ser llamado por el mismo Tribunal al estrado convirtiendo al Tribunal en parte y juez al mismo tiempo y luego de Hacer determinaciones de hechos a base de dicho testimonio en contra del Ledo. Osvaldo Ortiz Medina”.

La Regla de Evidencia 43 (C), 32 L.P.R.A. Ap. IV, R. 43, dispone:
“El juez que preside un juicio o vista tendrá control y amplia discreción sobre el modo en que la evidencia es presentada y los testigos son interrogados con miras a que la evidencia sea presentada en la forma más efectiva posible para el descubrimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando dilaciones innecesarias. ” (Enfasis Nuestro).
La Regla 43 en su inciso (D) añade:
“El juez podrá, a iniciativa propia o a petición de la parte, llamar testigos a declarar; permitiendo a todas las partes contrainterrogar al testigo así llamado. También podrá el juez, en cualquier caso, interrogar a un testigo, ya sea éste llamado a declarar por él o por la parte.” (Enfasis Nuestro).
El Tribunal Supremo de Puerto Rico en el caso de Pueblo v. Pabón, 102 D.P.R. 436, 440 (1974), dispuso:

“El juez no es el simple árbitro de un torneo medieval entre la defensa y el Ministerio Público o el retraído moderador de un debate. El juez es partícipe y actor principal en el esclarecimiento de la verdad y en la determinación de lo que es justo. El juez puede y debe ser en casos vistos con o sin jurado, aunque con mayor libertad en los segundos, participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto oficio reclama. Puede el juzgador, en consecuencia, requerir la declaración de determinados testigos o interrogar a los que las partes ofrézcan, siempre que su conducta se mantenga dentro de las normas de sobriedad y equilibrio que impiden que el juez sustituya, en vez de que complemente, la labor 
*727
del fiscal o del defensor. Nada impide que un juez, para aclarar un testimonio o una situación, o consciente de que no se han formulado algunas preguntas centrales para la determinación de lo sucedido verdaderamente en un caso, se tome la iniciativa a dicho efecto”.

La intervención de un juez de instancia no debe ser injustificada. Dicha intervención debe tener el propósito claro y preciso de descubrir y esclarecer la verdad de la manera más efectiva posible. Regla 2 de Evidencia, 32 L.P.R.A Ap. IV, R. 2; Regla 43 (C) (D); Pueblo v. Miranda Santiago, 130 D.P.R. 507, 517 (1992); Pueblo v. Pabón, supra.
La participación de un juez, que ante su propia iniciativa llama a testigos a declarar, está predicada en que se permita a todas las partes contrainterrogar al testigo llamado. R. 43 (D), supra; Pueblo v. Pabón, supra; Pueblo v. Miranda Santiago, supra.
En el caso de autos, el Sr. Ramón Augusto Martínez compareció ante el Tribunal de Instancia, el cual tenía ante sí una moción de reconsideración por una solicitud de intervención previamente presentada por el Sr. Martínez.
Anterior a la comparecencia por derecho propio del Sr. Martínez, el Ledo. Alfredo Ocasio Pérez compareció sustituyendo al Ledo. Salvador Ramírez, quien a su vez era el representante legal del Sr. Martínez. En dicha comparecencia, el Ledo. Ocasio expresó que el Sr. Martínez había presentado una moción de intervención por derecho propio, la cual había sido devuelta por falta de sellos y en la cual solicitaba intervenir en el pleito, ya que como dueño de la propiedad de cinco cuerdas, aquí descrita previamente, se han visto afectados considerablemente sus derechos. 
El foro de instancia denegó la moción en sala y continuó los procedimientos señalados para ese día. Posteriormente es que comparece el Sr. Martínez y expuso su posición al Tribunal. Solicitó la intervención en el pleito como dueño absoluto de la finca de cinco cuerdas, objeto de la controversia en donde están inmersos los notarios apelantes. Luego de escuchar a las partes, el Tribunal denegó la Moción de Reconsideración. Sin embargo, posteriormente, el Tribunal, a iniciativa propia, llamó a testificar al Sr. Martínez.
Las preguntas formuladas por el Juez que presidía el proceso fueron sobre la Escritura de Cancelación de Pagaré, otorgada ante el notario Francisco Vilanova Montalvo, escritura que había sido admitida previamente como prueba en los procedimientos. 
Posterior al interrogatorio realizado, el Juez permitió a las demás partes realizar un contrainterrogatorio respecto a lo que el Tribunal había preguntado. Estas optaron por no formular preguntas al testigo. 
Como expresamos anteriormente, el Juez no es un participante pasivo del proceso adversativo. Este tiene la indelegable responsabilidad de descubrir y esclarecer la verdad de las controversias presentadas ante él. En el caso ante nuestra consideración, la intervención del Juez fue una justificada. Más aún, se ofreció a todas las partes la oportunidad de contrainterrogar al testigo así llamado. Regla de Evidencia 43 (D), supra; Pueblo v. Miranda Santiago, supra; Pueblo v. Pabón, supra.
El error señalado no se cometió.
VI
El apelante Ortiz Medina señala que erró el Tribunal de Instancia al no desestimar la demanda bajo la Regla 39.2 (C) de las de Procedimiento Civil en tanto los demandantes no probaron ninguna de las alegaciones en contra del Ledo. Osvaldo Ortiz Medina.
*728 La Regla 39.2 (C) de las de Procedimiento Civil dispone:

“Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. ”

Una moción de desestimación bajo la referida regla será interpretada liberalmente de forma que únicamente se desestimará si el demandante no tiene derecho a ningún remedio bajo cualquiera hechos que él pueda probar en juicio a base de lo alegado en la demanda. Candal v. CT Radiology Office, Inc., 112 D.P.R. 227, 230-231 (1982).
Dicha Regla autoriza al tribunal a aquilatar la prueba presentada por los demandantes y a formular su apreciación de los hechos según la credibilidad que ésta le haya merecido después de un escrutinio sereno y cuidadoso de la prueba, sin que tenga que exigir, de ser esa la etapa procesal en la cual se presenta la moción, la presentación de prueba por el demandado, si llega al convencimiento de que el demandante puede prevalecer. Roselló Cruz v. García, 116 D.P.R. 511, 520 (1985); Romero Arroyo v. E.L.A., 139 D.P.R. 576, 579 (1995).
En el recurso de epígrafe, la parte apelante, compuesta por el Ledo. Ortiz Medina y su esposa, presentaron el 13 de noviembre de 2003, una moción solicitando desestimación de la demanda bajo las disposiciones de la Regla 39.2 (C) de las de Procedimiento Civil.
Los documentos que obran en el apéndice del caso rio demuestran determinación alguna tomada por el tribunal recurrido en cuanto a dicha moción. La única determinación posterior que obra en autos es la sentencia parcial y resolución emitida por el foro recurrido el 16 de abril de 2004.
YII
Los apelantes Ortiz Medina y Canabal López señalan que erró el foro recurrido al no realizar una determinación de negligencia comparada contra los demandantes bajo el Artículo 1802.
Para determinar negligencia comparada es necesario que el Tribunal analice y considere todos los hechos y circunstancias que mediaron en cada caso y cual fue la causa predominante. Velázquez v. Ponce Asphalt, 113 D. P.R. 39, 47 (1982).
En el caso de autos, los notarios apelantes fallaron a sus deberes notariales. En primer lugar, el Ledo. Ramírez Rivera fue negligente en el otorgamiento de las escrituras número 178, 179 del 19 de mayo de 1978; la escritura número 6 de 12 de enero de 1979, la escritura número 74 del 12 de abril de 1982. En dichas escrituras, el notario no hizo constar que la propiedad objeto de las compraventas allí otorgadas tenía un gravamen hipotecario del cual él tenía pleno conocimiento del mismo, ya que había otorgado la escritura numero 58 constitutiva del mismo el 12 de octubre de 1975. Tampoco acreditó la capacidad representativa de la Sra. María M. Camacho Hernández para representar a la empresa E. Cario A. Enterprises.
Por su parte, el notario Ortiz Medina, en el otorgamiento de la escritura número 51 de compraventa con fecha del 15 de diciembre de 1993, donde compareció la Sra. Dora Díaz Díaz y los aquí apelados, Sr. Kenneth Eral Lund y la Sra. Carmen Julia Rodríguez ¿amacho, falló en su deber al expresar que la propiedad antes *729 descrita se encontraba libre de cargas y gravámenes, cuando la misma tenía una gravamen hipotecario.
Asimismo, fue negligente al no presentar diligentemente esta escritura y la escritura número 37 de compraventa otorgada el 24 de septiembre de 1996, además de la escritura número 21 de 29 de marzo de 1984, ante el Registro de la Propiedad. 
El notario Ortiz Medina y el notario Ramírez Rivera fueron negligentes y sus omisiones fueron la causa próxima y única de los daños sufridos por lá parte aquí apelada. Por ello, no procedía determinación alguna en cuanto a negligencia comparada de la parte apelada en los recursos consolidados de epígrafe.
VIH
Hemos hecho un detenido y cuidadoso examen de toda la prueba que tuvo ante sí el foro aquí recurrido. El análisis y comparación de la misma sostiene las determinaciones de hechos que formuló el Tribunal de Primera Instancia. Ausentes indicios de prejuicio, parcialidad o circunstancias extraordinarias, no intervendremos con su apreciación de credibilidad. Benitez Guzmán v. García Merced, 126 D.P.R. 302 (1990); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984).
En consideración a lo expuesto, se confirma la Sentencia Parcial y Resolución recurrida.
Notifíquese.
Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 10
1. Sentencia y Resolución parcial, págs. 21-24.
2. T.E. págs. 4-22.
3. T.E. pág. 140.
4. T.E. pág. 40.
5. T.E. págs. 229-230.
6. T.E. pág. 233-245.
7. Escrito de Apelación KLAN-04-00852, pág. 14.
8. Anejo 2 del Apéndice de alegato de la parte apelada en el caso KLAN-04-00852.
9. T.E. pág. 371.
10. T.E. pág. 386.
11. T.E. pág 388.
12. T.E. págs. 385-390.
*730 13. T.E. pág. 420.
14. T.E. págs. 272-286.
15. T.E. págs. 27, 64, 103,172.
16. T.E. págs. 104-108.
17. T.E. pág. 111:
" — Hon. Juez: Aquí, la parte demandante es la más...., este Tribunal entiende que esto está aquí desde 98 y han tenido oportunidad de intervenir para venir ahora y sabían más inclusive, ya el notario había no decidir y que el abogado había tenido, o sea que si entiende que tiene unos derechos pueden llevar a cabo unos procesos. Yo entiendo ahora está al día y nosotros vamos a continuar con este pleito. Adelante Compañero. ”
18. T.E. págs. 303-308.
19. T.E. págs. 311:
“ — Hon. Juez: Bien el Tribunal ha escuchado las partes, declara no ha lugar la Moción de Reconsideración por el caso de intervención. Vamos, a esto es un caso básicamente (no se entiende lo que habla) de todos los abogados que se están lucidando y cometieron o un error o no y si le causaron daños a los demandantes. Nada tiene que ver con la virtualidad de este caso. El Tribunal en un momento dado sabrá si hubo o no hubo negligencia de los titulares en inscribirle las escrituras a los demandados. Demandantes, persone. Puede retirarse, favor mantenerse en el Tribunal. ”
20. T.E. pág. 470.
21. T.E. pág. 471.
22. T.E. págs. 40-41.
23. T.E. págs. 62-64.